| | |
|---|---|
| Thomas G. Walker (ISB 1856)<br>COSHO HUMPHREY, LLP<br>800 Park Blvd., Suite 790<br>P. O. Box 9518<br>Boise, Idaho 83707-9518<br>Direct Phone:  (208) 639-5607<br>Cell phone:  (208) 869-1508<br>Direct Facsimile:  (208) 639-5609<br>E-mail:twalker@cosholaw.com | KAHN GAUTHIER SWICK, LLC<br>Lewis S. Kahn<br>650 Poydras Street, Suite 2150<br>New Orleans, LA  70130<br>Telephone: (504) 455-1400<br>Fax:  (504) 455-1498<br>E-mail: lewis.kahn@kglg.com |
| **Proposed Liaison Counsel for Proposed Lead Plaintiff and the Class** | -and- |
| BROWER PIVEN, A Professional Corporation<br>David A.P. Brower<br>488 Madison Ave., 8th Fl.<br>New York, NY  10022<br>Telephone: (212) 501-9000<br>Fax:  (212) 501-0300 | Kim E. Miller<br>12 East 41st Street, 12th Floor<br>New York, NY 10017<br>Telephone: (212) 696-3730<br>Fax: (504) 455-1400<br>E-mail:  kim.miller@kgscounsel.com |
| **Proposed Co-Lead Counsel for Proposed Lead Plaintiff and the Class** | **Proposed Co-Lead Counsel for Proposed Lead Plaintiff and the Class** |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JEFF BENSON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>                              Plaintiff,<br>vs.<br><br>ATLAS MINING COMPANY, an Idaho corporation, WILLIAM T. JACOBSON, AND ROBERT DUMONT,<br><br>                              Defendants. | Civil Docket  No. 07-CV-00428-EJL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO COMPETING MOVANTS' MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL AND IN FURTHER SUPPORT OF MOTION OF RUDY RODRIGUEZ FOR CONSOLIDATION OF ALL SIMILAR ACTIONS, APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD PLAINTIFF'S CHOICE OF LEAD COUNSEL AND LIAISON COUNSEL** |

(Captions continue on following page)

| | |
|---|---|
| PAUL BERGER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>                      Plaintiff,<br>vs.<br><br>ATLAS MINING COMPANY, an Idaho corporation, WILLIAM T. JACOBSON, AND ROBERT DUMONT,<br><br>                      Defendants. | Civil Docket No. 07-CV-00449-MHW |
| DANIEL O'HERN, SR., INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>                      Plaintiff,<br>vs.<br><br>ATLAS MINING COMPANY, an Idaho corporation, WILLIAM T. JACOBSON, AND ROBERT DUMONT,<br><br>                      Defendants. | Civil Docket No. 07-CV-00503-LMB |

**PRELIMINARY STATEMENT**

Presumptive Lead Plaintiff Rudy Rodriguez ("Mr. Rodriguez") hereby submits his memorandum in opposition to the motions of the O'Hern Group and the so-called "Atlas Investors" – an 11th hour, lawyer-created combination of some but not all members of the now-defunct "Kipphut Movants" along with five additional individuals (hereinafter, the "AI/Kipphut Group") -- for appointment as Lead Plaintiff and approval of their selections of lead counsel in the above-captioned actions ("the Action") filed against Atlas Mining Company[1] ("Atlas" or the "Company") and in further support of his motion to consolidate the Action, to be appointed Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by Section 101(a) of the Private Securities Litigation Reform Act of 1995 ("PLSRA"), and for approval of his selection of the law firms of Kahn Gauthier Swick, LLC ("KGS"), and Brower Piven, A Professional Corporation ("Brower Piven"), as Co-Lead Counsel for the Class, and Cosho Humphrey, LLP ("Cosho Humphrey"), as Liaison Counsel for the Class.

Four movants timely sought appointment as lead plaintiff in this Action: presumptive lead plaintiff Mr. Rodriguez with losses of $167,151.20; the six-member O'Hern Group with $92,589.75 in purported losses; the now-withdrawn Kipphut Movants; and the facially defective reformulated "AI/Kipphut Group," comprised of two members of the former Kipphut Movants along with five other members. The two members of the AI/Kipphut Group who initially moved as part of the Kipphut Movants have purported losses of $53,241.20, while the remaining five group members have purported losses of $127,228.00.

---

[1] The related securities fraud class actions include: *Jeff Benson v. Atlas Mining Company, et al.*, 07-00428 (EJL) (filed October 11, 2007), *Paul Berger v. Atlas Mining Company, et al.*, 07-00449 (MHW) (filed October 19, 2007) and *Daniel O'Hern, Sr. v. Atlas Mining Company, et al.*, 07-00503 (LMB).

1

As discussed in detail herein below, the Kipphut Movants withdrew their motion shortly after filing it, after presumptive lead plaintiff Mr. Rodriguez filed his motion with greater losses. *See* Notice of Withdrawal of Motion, filed 12/11/2007.  Two of the three members of the Kipphut Movants thereafter refiled yet another lead plaintiff motion as part of AI/Kipphut Group, an unwieldy, seven-person group with a different selection of lead counsel than the choice of counsel of the Kipphut Movants, but with the Kipphut Movants' former choice of counsel, Federman & Sherwood, listed as "Additional Counsel for Movants."

As all movants agree to the consolidation of the Action pursuant to Federal Rule of Civil Procedure (F.R.C.P.) 42(a), and all the cases in the Action assert common questions of law or fact, the Court should consolidate the Action.

While the AI/Kipphut Group claims losses greater than those of Mr. Rodriguez, AI/Kipphut is facially inadequate under Federal Rule of Civil Procedure 23 and fails utterly to meet the requirements to be the presumptive lead plaintiff. The seven-member group (far larger than the appropriate 3-5 member group size condoned by the Securities Exchange Commission) has been obviously cobbled together, apparently through manipulation by counsel, to aggregate a loss just slightly larger than the losses of Mr. Rodriguez, who filed his motion via ECF prior to the filing by the AI/Kipphut Group. As the AI/Kipphut Group is an improperly formed group designed in the 11th hour by counsel attempting to "beat out" Mr. Rodriguez, the true presumptive lead plaintiff, and as AI is clearly incapable of maintaining control of the litigation, a prime object of the Private Securities Litigation Reform Act (the "PSLRA"), the AI/Kipphut Group is not the presumptive lead plaintiff.

O'Hern, also an impermissibly large group with six members that has failed to demonstrate its cohesiveness and ability to manage the litigation, has claimed losses of just

$92,589.75, and cannot rebut the presumption in favor of Mr. Rodriguez.

Mr. Rodriguez, with losses only marginally smaller than those of reconstituted AI/Kipphut Group, is a single sophisticated investor whose claims are coextensive with those of the Class (thereby meeting the typicality requirement) and who has attested both to his understanding of his duties as a movant for lead plaintiff and to his intention to oversee every aspect of the litigation, not leaving control of the Action solely in the hands of his attorneys (thereby meeting the adequacy requirement). Mr. Rodriguez has chosen experienced and capable co-lead and liaison counsel to represent the Class, and given the disqualification of AI, is the movant with the largest losses who also meets the requirements of Rule 23. Mr. Rodriguez is therefore the presumptive lead plaintiff in this Action.

Mr. Rodriguez respectfully requests that this Court grant his motion for consolidation, for appointment as lead plaintiff, and for approval of his selection of counsel for the Class, and deny all competing motions.

## ARGUMENT

### I. THE COURT SHOULD CONSOLIDATE THE SIMILAR ACTIONS

All movants agree that the related actions should be consolidated. The Federal Rules of Civil Procedure provide for consolidation of actions pending before a court that assert "common questions of law or fact," F.R.C.P. 42(a), and the PSLRA provides for consolidation of related federal securities actions prior to the court's determination of the lead plaintiff issue. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). Here, all securities class actions involve common—indeed, virtually identical—questions of law and fact and assert claims on behalf of the same Class of aggrieved Atlas investors. Therefore, consolidation of these actions is proper and should be granted at this time. *See, e.g., Schonfield v. Dendreon Corp.*, 2007 U.S. Dist. LEXIS 76816 (W.D. Wash. 2007);

3

*Garber v. Juniper Networks, Inc.*, 2006 U.S. Dist. LEXIS 86721 (N.D. Cal. 2006).

## II.  Mr. Rodriguez Is the Presumptive Lead Plaintiff and that Presumption Has Not Been and Cannot Be Rebutted

### A.  The Legal Standard

According to the PSLRA, within 90 days after publication of the initial notice of pendency of the action, the Court shall appoint as Lead Plaintiff the movant or movants that the Court determines to be most capable of adequately representing the interests of Class members. 15 U.S.C. § 78u-4(a)(3)(B)(i).  In determining the "most adequate plaintiff," the act provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that—
>
> (aa)  has either filed the complaint or made a motion in response to a notice…
>
> (bb)  in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)  otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [pertaining to class actions].

15 U.S.C. § 78u-4(a)(3)(B)(iii).

The PSLRA clearly mandates that the presumptive most adequate lead plaintiff in a securities class action is the movant with the largest losses who satisfies the typicality and adequacy requirements of Rule 23. *Herrgott v. United States Dist. Court for the N. Dist. of Cal.*(In re Cavanaugh), 306 F.3d 726, 732 (9th Cir. 2002)("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status…"); *Tanne v. Autobytel*, Inc., 226 F.R.D. 659, 664 (N.D. Cal. 2005)(same); *Ferrari v. Gisch*, 225 F.R.D. 599, 602 (C.D. Cal. 2004)(same).

Once the Court has determined which timely movant has the largest financial interest in

4

the litigation, and that such movant is typical of other members of the class, and will adequately represent the class in the action under Rule 23, that movant becomes the presumptive lead plaintiff. That presumption may be rebutted, but "***only upon proof***" from a member of the class that the presumptive lead plaintiff will not fairly and adequately protect the interests of the Class, or is subject to unique defenses that will render such plaintiff incapable of adequately representing the Class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II) (emphasis added).

As discussed herein below, Mr. Rodriguez meets the typicality and adequacy requirements of Rule 23(a) and, with $167,151.20 in losses, is the movant with the largest losses who satisfies those requirements. That presumption has not been and cannot be rebutted by the O'Hern Group or the AI/Hipput Group.

**B. Mr. Rodriguez Is the Movant with the Largest Losses Who Also Meets the Typicality and Adequacy Requirements of Rule 23**

In addition to evidencing the largest financial interest in the outcome of this litigation of any properly-formed movant, Mr. Rodriguez's Certification demonstrates his intent to serve as Lead Plaintiff in this litigation, including his cognizance of the duties of serving in that role.[2] Moreover, Mr. Rodriguez satisfies both the applicable requirements of the PSLRA and Rule 23. Mr. Rodriguez has sustained a substantial loss from his investment in Atlas Mining stock and has shown his willingness to represent the Class by signing a Certification detailing his Atlas Mining transaction information during the Class Period. *See* Declaration of Thomas G. Walker ("Walker Decl."), submitted with Mr. Rodriguez's opening motion, at Exhibit A. As demonstrated by his Certification, Mr. Rodriguez is prepared to consult with counsel on a regular basis, prior to every

---

[2] The relevant federal securities laws specifically authorize any Class Member seeking to be appointed Lead Plaintiff to either file a complaint or move for appointment as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). A copy of Mr. Rodriguez's Certification of his transactions in Atlas Mining securities during the Class Period is attached as Exhibit A to the Walker Declaration that has been filed in support of this motion.

major litigation event, and direct the course of litigation, with the benefit of counsel's advice.  In addition, Mr. Rodriguez has selected and retained highly competent counsel with significant experience in class action and securities litigation to represent the Class.  The firm biographies of proposed Lead Counsel for the Class, KGS and Brower Piven, are attached as Exhibit C to the Walker Declaration.

Of the four prerequisites to class certification, only two—typicality and adequacy—directly address the personal characteristics of the class representative.  *Siegall v. Tibco Software, Inc.*, 2006 U.S. Dist. LEXIS 26780, *15 (N.D. Cal. February 24, 2006) ("In the context of determining the appropriate lead plaintiff, the requirements of 'typicality' and adequacy of representation are key factors.")

Under Rule 23(a)(3), typicality exists where "the claims…of the representative parties" are "typical of the claims…of the class."  The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiff's claims arise from the same event or course of conduct that gives rise to claims of other class members, and when the claims are based on the same legal theory.  *See Crossen v. CV Therapeutics,* 2005 U.S. Dist. LEXIS 41396, *13 (N.D. Cal. August 9, 2005). In this case, the typicality requirement is met because Mr. Rodriguez's claims are identical, non-competing and non-conflicting with the claims of the other class members.  Mr. Rodriguez and all of the other Class members purchased Atlas Mining securities during the Class Period when the stock prices were artificially inflated as a result of the Defendants' fraudulent misrepresentations and omissions, and thus, both Mr. Rodriguez and the Class members suffered damages as a result of these purchases.  Simply put, Mr. Rodriguez, like all other Class members:  (1) purchased Atlas Mining stock during the Class Period; (2) purchased Atlas Mining stock at artificially-inflated prices as a result of Defendants' misrepresentations and omissions;

and (3) suffered damages thereby.  Mr. Rodriguez's claims and injuries "arise from the same conduct from which the other class members' claims and injuries arise."  *Crossen*, at *13.  Mr. Rodriguez is not subject to any unique or special defenses.

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class."  The PSLRA directs the Court to limit its inquiry regarding the adequacy of the Movant to: (1) whether there are any conflicts between the interests of the Movant and the members of the Class; (2) whether the Movant is an adequate representative of the Class; (3) whether the interests of the Movant are clearly aligned with the members of the putative Class; and (4) whether there is evidence of any antagonism between their respective interests.  15 U.S.C. § 78u-4(a)(3)(B).  *See also Miller v. Ventro Corp.*, 2001 U.S. Dist. LEXIS 26027, *44 (N.D. Cal. November 28, 2001) (*citing Takeda v. Turbodyne Techs.*, 67 F.Supp. 2d 1129, 1132 (C.D. Cal. 1999)). Mr. Rodriguez's interests are clearly aligned with the members of the Class because his claims are identical to the claims of the Class.  There is no evidence of antagonism between his interests and those of the proposed Class members.  Furthermore, Mr. Rodriguez has a significant, compelling interest in prosecuting this action to a successful conclusion based upon the very large financial loss he incurred as a result of the wrongful conduct alleged herein.  This motivation, combined with Mr. Rodriguez's identical interest with the members of the Class, clearly shows that Mr. Rodriguez will adequately and vigorously pursue the interests of the Class.  In addition, Mr. Rodriguez has selected as Proposed Lead Counsel law firms that are highly experienced in successfully prosecuting securities class actions to represent him.

    **C. The Reconstituted AI/Kipphut Group Is Facially Defective, Meets None of the Requirements for the Presumptive Lead Plaintiff, and Cannot Rebut the Presumption in Favor of Mr. Rodriguez**

Although the reconstituted AI/Kipphut Group purports to have the largest losses of any

movant for Lead Plaintiff in this Action, the AI/Kipphut Group is facially defective as it is not one group but an impermissibly large, slapped-together, lawyer-driven amalgamation of some members of a prior movant, now withdrawn, with losses of $53,241.20, along with five others with losses of $127,228.00. This impermissibly-formed AI/Kipphut Group meets none of the requirements for presumptive lead plaintiff status, including the adequacy and typicality requirements of Rule 23.

As discussed above, Rule 23 requires that the lead plaintiff in a class action exhibit typicality and adequacy to represent the Class. *Siegall*, 2006 U.S. Dist. LEXIS 26780 ("In the context of determining the appropriate lead plaintiff, the requirements of 'typicality' and adequacy of representation are the key factors."). See also *Cavanaugh*, 306 F.3d at 730; *Armour v. Network Assocs.*, 171 F. Supp. 2d 1044, 1051 (N.D. Cal. 2001); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998)("[t]ypicality and adequacy of representation are the only provisions [of Rule 23] relevant to a determination of lead plaintiff under the PSLRA.").

Movants for lead plaintiff in securities class action who are groups must be small, cohesive groups able to manage the litigation effectively. *See generally In re Peregrine Sys. Sec. Litig.*, 2002 U.S. Dist. LEXIS 27690 (S.D. Cal. 2002)("cohesive relationship" between group members must be shown); *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1022 (N.D. Cal. 1999)(groups lacking "cohesive identity" are inadequate); *In re Versata, Inc.*, 2001 U.S. Dist. LEXIS 24270 (N.D. Cal. 2001)("cohesiveness, an ability to direct litigation, and collective confluence with the interests of the class" are requisite characteristics of a proper group movant).

Indeed, the SEC and many courts have found "that courts should generally presume that groups with more than five members are too large to work effectively." *In re Cendant Corp.*

8

*Litig.*, 264 F.3d 201, 267 (3d Cir. 2001), citing Brief for the Securities and Exchange Commission as Amicus Curiae at 17 n.13. *See also Peregrine*, 2002 U.S. Dist. LEXIS 27690 ("The SEC counsels that groups with more than five members are presumptively too large to work as a one decision making body."); *In re Gemstar-Tv Guide Int'l Secs. Litig.*, 209 F.R.D. 447, 450 (N.D. Cal. 2002)(noting that a seven-member group was too large to effectively manage the litigation); *Network Assocs.*, 76 F. Supp. 2d at 1041 ("In the Commission's view, a lead plaintiff "group" should generally be limited to three to five members, and thus be able to actively oversee the conduct of the litigation and monitor the effectiveness of counsel for the protection of the class.")

The AI/Kipphut Group is not a small group, nor a cohesive group, and certainly cannot manage the litigation effectively. Putting aside the impermissible lawyer-driven formation of the group, The AI/Kipphut Group has no fewer than seven movants – a truly cumbersome size that is ineffective for efficient decision making and management of the litigation.

Further, The AI/Kipphut Group has been cobbled together in a clear lawyer-driven maneuver to aggregate the largest losses in the litigation. On December 11, 2007, the last day to file a motion for appointment as lead plaintiff in this action, the Kipphut Group, comprised of Michael B. Kipphut, Anna D. Kipphut, and Robert B. Stonesifer, filed a motion for appointment as lead plaintiff. The Kipphut Group's choice of counsel was Gordon Law Offices and Federman & Sherwood. The losses of the Kipphut Group were purportedly $54,386.70. Later that same day, Mr. Rodriguez filed his motion for appointment as lead plaintiff, with losses of $167,151.20. The Kipphut Group then swiftly withdrew its motion.

In an attempt to do an end-run around the PSLRA, counsel for AI and counsel for the now-defunct Kipphut Movants slapped together in the 11th hour an impermissibly large, lawyer-

driven group for the transparent sole purpose of arriving at a dollar figure high enough to just nose out the losses of presumptive Lead Plaintiff Mr. Rodriguez without regard to Rule 23, the ability to effectively manage the litigation, or the statute itself.  Indeed, there was so little time between the withdrawal of the first motion by Kipphut Movants and the filing of the second motion by AI including two former Kipphut Movants group members, that the likelihood that all seven AI/Kipphut group members even knew about the *existence* of all the other group members and the fact that two of the members had previously filed and withdrawn another lead plaintiff motion in which different counsel was selected is highly questionable, and the likelihood that all members carefully evaluated their changing selections of counsel is seriously in doubt.  There is no explanation of why two of the Kipphut Movants – Stonesifer and Michael B. Kippurt – abandoned the third member of their defunct group, Ann D. Kipphut, and glommed on to another group that already contained five members whose losses were smaller than those of Mr. Rodriguez.  There is nothing to indicate that this group of seven can work together and in fact the multiple filings, the notice of withdrawal, and the conflicting choices of counsel, readily illustrate the contrary: the AI/Kipphut Group cannot manage the filing of a proper lead plaintiff motion, much less manage this complex securities litigation, and the group is totally controlled by counsel.

      Thus, the AI/Kipphut Group is a group of seven strangers, two of whom previously selected Gordon Law Offices and Federman & Sherwood as their chosen counsel.  One of those firms, Federman & Sherwood, is now listed as "Additional Counsel for Movants."

      It is clear that the members of the Kipphut Group and AI—or, more accurately, their lawyers—realized that the original Kipphut Group and the five-member AI group who had not yet filed did not have sufficient losses to "outdo" those of Mr. Rodriguez, and hastily reformed

the groups, with new members and a new name, in order to contrive losses larger than those of Mr. Rodriguez, contrary to the goals of the PSLRA. "The purpose behind the PSLRA is to prevent lawyer-driven litigation." *Ferrari*, 2004 U.S. Dist. LEXIS 13898, at *10. See also *Armour,* 171 F. Supp. 2d at 1047 (D. Cal. 2001)(PSLRA provisions for appointment of lead plaintiff "motivated by Congressional concerns about the prevalence of "lawyer-driven" securities class actions."). The House Conference Report on the PSLRA states that the lead plaintiff provisions were "intended to encourage the most capable representatives of the plaintiff class to participate in class action litigation and to exercise supervision and control of the lawyers for the class." H.R. Rep. No. 104-369 at 32 (1995) reprinted in 1996 U.S.C.C.A.N. 730 (emphasis added). It is hard to imagine a more obvious example of lawyer-driven litigation than the AI/Kipphut Group's formation.

Other than the claimed "lack of communication" purportedly causing the Kipphut Movants to file their motion "prematurely and inadvertently," Kipphut Withdrawal at 2, there is no indication why the AI/Kipphut Group was formed to include two of the three Kipphut Movants members. The AI/Kipphut Group has not submitted any information indicating how or why the group came together, or demonstrating their ability to control the litigation. In the Ninth Circuit, "groups of unrelated investors, while not per se impermissible lead plaintiffs under the PSLRA, are not adequate class representatives absent a showing that they are able to coordinate their efforts in the litigation." *Schriver v. Impac Mortg. Holdings, Inc.*, 2006 U.S. Dist. LEXIS 40607 (C.D. Cal. 2006). *See also In re Ribozyme Pharms. Sec. Litig.*, 192 F.R.D. 656, 659 (D. Colo. 2000)("Courts have ruled that counsel may not aggregate large groups of class members in order to form a group with the largest financial interest."); *In re BAAN Co. Sec. Litig.*, 186 F.R.D. 214, 216-217 (D.D.C. 1999)(same). Indeed, the fact that two of the AI/Kipphut Group

11

members—Kipphut and Stonesifer—"inadvertently" filed a motion for lead plaintiff and then withdrew it, only to join another group moving for lead plaintiff, indicates either that they have a marked lack of organization and competence, or that their various lawyers, rather than themselves, are in control and attempting to trump Mr. Rodriguez's losses with 11th hour changes to the group structure of their clients. Neither circumstance speaks to the group's ability to direct the litigation and prevent it from falling entirely under the control of their attorneys, a prime object of the PSLRA's provisions for lead plaintiff appointment.

Furthermore, the certifications of the five members of AI/Kipphut who did not previously move as part of the Kipphut Movants state: "I am willing to serve as lead plaintiff either individually or as part of a group," without identifying what group they are willing to be a member of; the names of the other members of the group; how, when, and why any such group was or will be formed; or how it will function to manage the litigation and oversee its chosen counsel. *See* Declaration of Phillip Gordon in Support of Motion of the Atlas Investors, Exhibit 2. The certifications therefore cede, on their faces, decision-making power as to lead plaintiff structure to the attorneys.

Further, the AI/Kipphut certifications directly conflict with each other regarding the selection of counsel. The certifications of Mssrs. Stonesifer and Kipphut refer only to Federman & Sherwood, making no mention whatsoever of the Rosen Law Firm, PA, ("Rosen Firm") which is – according the the AI/Kipphut motion -- its selection of lead counsel. The other five members of the group expressly note in their certifications that The Rosen Law Firm, PA, "is entitled to bring an action" and make no mention whatsoever of Federman & Sherwood. This is a clear indication that the formation of the *ad-hoc* group was belatedly decided upon by the attorneys without meaningful involvement or input by the group members. Query whether

12

Mssrs. Steonsifer and Kipphut had even heard of the Rosen Firm prior to the making of the motion, much less made a meaningful selection of that firm as Lead Counsel.

### D. O'Hern Cannot Rebut the Lead Plaintiff Presumption in Favor of Mr. Rodriguez

The O'Hern Group, with $92,589.75 in losses, roughly half of those suffered by Mr. Rodriguez, cannot rebut the Lead Plaintiff presumption in favor of Mr. Rodriguez. Mr. Rodriguez, with $167,151.20 in losses, as a single investor has losses larger than those of the entire six-person O'Hern Group combined, not to mention any individual investor in the group. The O'Hern Group also has six members which is too large to effectively manage the litigation. *See*, *e.g.*, *Peregrine*, 2002 U.S. Dist. LEXIS 27690 ("The SEC counsels that groups with more than five members are presumptively too large to work as a one decision making body.").

### III. The Court Should Approve Mr. Rodriguez's Choice of Lead and Liaison Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the Class, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) and 15 U.S.C. § 77z-1(a)(3)(B)(v). Thus, this Court should not disturb the Lead Plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) and 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa).

Mr. Rodriguez has chosen KGS and Brower Piven to serve as Co-Lead Counsel and Cosho Humphrey to serve as Liaison Counsel for the Class. These firms and their attorneys have not only successfully prosecuted complex securities actions, but have also successfully prosecuted many other types of complex class actions. *See* Walker Decl. Ex. C. Furthermore, Mr. Rodriguez's counsel has continually invested time and resources in carefully investigating and prosecuting this case. This Court may be assured that in the event this motion is granted, the members of the Class will receive the highest caliber legal representation.

## **CONCLUSION**

For all of the foregoing reasons, Mr. Rodriguez respectfully requests that this Court: (1) consolidate all related actions, (2) appoint Mr. Rodriguez to serve as Lead Plaintiff in this consolidated action; (3) approve Mr. Rodriguez's selection of KGS and Brower Piven as Co-Lead Counsel for the Class and Cosho Humphrey as Liaison Counsel for the Class and deny the competing motions; and (4) grant such other and further relief as the Court may deem just and proper.

DATED:  January 7, 2008        By:    /s/ Thomas G. Walker

        THOMAS G. WALKER
**COSHO HUMPHREY, LLP**
800 Park Blvd., Suite 790
P. O. Box 9518
Boise, Idaho 83707-9518
Direct Phone:          (208) 639-5607
Cell phone:             (208) 869-1508
Direct Facsimile:     (208) 639-5609
E-mail:twalker@cosholaw.com

**Proposed Liaison Counsel for Proposed Lead Plaintiff and the Class**

**KAHN GAUTHIER SWICK, LLC**
Lewis S. Kahn
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Telephone: (504) 455-1400
Facsimile: (504) 455-1498

-and-

Kim E. Miller (S.B.N. 178370)
12 East 41st Street, 12th Floor
New York, NY 10017
Telephone:  (212) 696-3730
Facsimile:  (504) 455-1498

**BROWER PIVEN, A Professional Corporation**

14

David A.P. Brower
488 Madison Avenue, 8th Fl.
New York, NY  10022
Telephone:  (212) 501-9000
Fax:  (212) 501-0300

**Proposed Co-Lead Counsel for Proposed Lead Plaintiff and the Class**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I served a true and correct copy of the foregoing on the individuals listed below through electronic notification to those parties registered with the U.S. Court's CM/ECF System on the 7th day of January, 2008:

**Thomas A. Banducci**
BANDUCCI WOODARD SCHWARTZMAN, PLLC
tbanducci@bwslawgroup.com

**Bruce S Bistline**
GORDON LAW OFFICES
bbistline@gordonlawoffices.com

**W. Adam Duerk**
Milodragovich, Dale, Steinbrenner & Nygren, PC
aduerk@bigskylawyers.com

**Philip Howard Gordon**
GORDON LAW OFFICES
pgordon@gordonlawoffices.com

**Bryan A Nickels**
HALL FARLEY OBERRECHT and BLANTON
ban@hallfarley.com

**B Newal Squyres**
HOLLAND & HART
nsquyres@hollandhart.com


/s/ Thomas G. Walker