IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| | ) | Case No. CV  07-428-N-EJL-MHW |
| IN RE ATLAS MINING COMPANY | ) | |
| SECURITIES LITIGATION | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

Currently pending before the Court are motions filed by four different investors/investor groups to consolidate three pending lawsuits, be appointed lead plaintiff of the class action, and for approval of lead plaintiff's selection of counsel.  Two of these motions, one filed by a group known as the Kipphut Movants (Docket No. 13) and the other by Rudy Rodriguez (Docket No. 15) have been withdrawn.  *See* Docket No. 16 and Docket No. 45.  Accordingly, those motions are MOOT.  Still to be addressed are the motions of the O'Hern Group (Docket No. 12) and the Atlas Investors (Docket No. 17) to be appointed as lead plaintiff.

On January 22, 2008, Judge Lodge entered an order (Docket No. 29) consolidating the

three lawsuits, *Benson v. Atlas Mining Co.*, Case No. 07-428-N-EJL, *Berger v. Atlas Mining Co.*, Case No. 07-449-N-MHW, and *O'Hern v. Atlas Mining Co.*, Case No. 07-503-N-LMB, into a lead case to be captioned *In re Atlas Mining Securities Litigation*, Case No. CV 07-428-N-EJL.

## I.
## Factual Background

Atlas Mining Company ("Atlas Mining") is a natural resources company based in Osborn, Idaho, that engages in the acquisition, exploration, and development of its mineral, timber and resource properties in Idaho and Utah.  Atlas Mining develops the Dragon Mine in Juab County, Utah which is principally exploited for halloysite clay.  The company also provides contract mining services and specialized civil construction services for mine operators, exploration companies, and construction and natural resource industries.  Atlas Mining owns approximately 900 acres of fee-simple property and patented mining claims and 260 acres of mineral rights and unpatented claims located in the Coeur d'Alene mining district in Shoshone County, Idaho.

This litigation against Atlas Mining and certain Atlas Mining officers stems from Atlas Mining's allegedly improper accounting manipulations of reported earnings.  On October 9, 2007, before market open, the company revealed that its prior financial statements for the fiscal years ended December 31, 2004, 2005 and 2006, along with the company's quarterly reports issued for March 31, June 30 and September 30, for the years 2005, 2006 and 2007 were materially false, misleading and had to be restated.  The company admitted the restatements were necessary because Atlas Mining had inflated its revenues and under-reported net losses and long-term liabilities by improperly recognizing as revenues *future* deliveries of halloysite clay from Atlas Mining's Dragon Mine that were never delivered.  Atlas Mining also announced that its

**Memorandum Decision and Order- Page 2**

previously reported net losses for the quarter and fiscal year ended 2004 were materially misstated with net losses being $1,196,274, instead of the reported net losses $946,274.

These disclosure caused the company's stock prices to fall.  On October 8, 2007, the company's stock closed trading at $1.64 per share with 52,700 shares trading that day.  On October 9, 2007, the day of the press release, the company's stock opened the day trading at $1.06 and closed the day at $.80 a share, or down over 51% from the previous days' close, on over 6,418,299 shares traded.

## II.
## Procedural Background

The first lawsuit commenced in this jurisdiction on October 11, 2007 was *Benson v. Atlas Mining Co., et al.*, Case No. CV 07-428-N-EJL.[1]  Pursuant to 15 U.S.C. § 78u-4(a)(3)(A), on October 12, 2007, the first notice that a class action had been initiated against defendants was published over a widely circulated national business-oriented wire service, *Market Wire*, advising members of the proposed class of their right to move the Court to serve as lead plaintiff within 60 days.  *Declaration of Joseph J. DePalma, "DePalma Dec.,"* Ex. B (Docket No. 14-3).

On December 11, 2007, several motions to serve as lead plaintiff were filed in this class action lawsuit.  First, at 4:43 p.m. MST, James O'Hern and John O'Hern (the "O'Hern Group") filed a motion seeking appointment as lead plaintiff.  (Docket No. 12).  The O'Hern Group had selected the law firms of Lite DePalma Greenberg & Rivas, LLC ("Lite DePalma") as lead counsel and Holland & Hart as liaison counsel.  Next, at 4:50 p.m. MST, the Kipphut Movants[2]

---

[1]  A second lawsuit was filed on October 19, 2007, *Berger v. Atlas Mining Co., et al.*, Case No. 07-449-N-MHW.  A third lawsuit was filed on November 26, 2007, *O'Hern v. Atlas Mining Co., et al.*, Case No. 07-503-N-LMB.

[2]  The Kipphut Movants consisted of Michael B. Kipphut, Anna D. Kipphut, and Robert B. Stonesifer.

requested that they be appointed lead plaintiffs.  (Docket No. 13).  The Kipphut Movants had selected the law firms of Federman & Sherwood as lead counsel and Gordon Law Offices as liaison counsel.  The next filing for lead plaintiff status was made by Rudy J. Rodriguez at 5:05 p.m. MST.  (Docket No. 15).  Mr. Rodriguez selected the law firms of Kahn Gautheir Swick, LLC ("KGS") and Brower Piven as co-lead counsel and Cosho Humphrey as liaison counsel. Subsequently, at 8:47 p.m. MST, the Kipphut Movants withdrew their motion for lead plaintiff status, noting their motion had been filed prematurely and inadvertently.  (Docket No. 16). Then, a group calling themselves the "Atlas Investors" filed a motion to be appointed lead plaintiff at 8:53 p.m. MST.  (Docket No. 17).  The Atlas Investors consist of Frank and Margaret Cardy, Laurence Wang, Jacob Shank, Howard Nair, Robert B. Stonesifer, and Michael Kipphut.[3] The Atlas Investors seek to have the Rosen Law Firm appointed as lead counsel and Gordon Law Offices appointed as liaison counsel.  On the day of the hearing in this matter, March 12, 2008, Mr. Rodriguez withdrew his motion to be appointed lead plaintiff.  (Docket No. 45).

### III.
### Motions to Appoint Lead Plaintiffs and Approve Selection of Counsel

The Private Securities Litigation Reform Act ("PSLRA") sets forth a procedure for the selection of a lead plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a).

First, the plaintiff who files the initial action must publish notice to the class informing class members of their right to file a motion for appointment as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(A)(I).  Within 60 days after publication of the notice, any member of the proposed class may move the court to serve as lead plaintiff of the purported class.  15 U.S.C. § 78u-

---

[3] These last two members of the Atlas Investors group were also members of the Kipphut Movants group.

4(a)(3)(A)(i)(II).

Next, the PSLRA provides that within 90 days after publication of notice, "the court shall consider any motion made by a purported class member in response to the notice, including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints" and shall appoint as lead plaintiff the member or members that the court determines to be "most capable of adequately representing the interests of class members..."  15 U.S.C. § 78u-4(a)(3)(B)(i).

The PSLRA also provides a rebuttable presumption that the most adequate plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice...
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  This presumption can be rebutted only upon proof by a member of the purported plaintiff class that the presumptive plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The Ninth Circuit has recognized that a district court must follow a three-step process to determine the lead plaintiff in these actions.  *In re Cavanaugh*, 360 F.3d 726, 729 (9th Cir. 2002).  First, the court must determine whether the procedural requirements are satisfied.  *Id.* The procedural requirements demand that a motion for appointment as lead plaintiff be filed within 60 days of the published notice of the class action.  15 U.S.C. § 78u-4(a)(3)(A).  Each prospective plaintiff must also provide a sworn certification that he or she has read the

complaint, did not purchase the security at the direction of counsel or in order to participate in any private action and is willing to serve as a representative party.  *Id.* § 78u-4(a)(2)(A).  Second, the court must determine who has the largest financial interest by comparing the financial stakes of the parties.  *In re Cavanaugh*, 360 F.3d. at 729-30.  Once the individual or group of individuals with the largest financial interest is identified, the court must "focus its attention on *that* plaintiff" and determine whether the Rule 23 requirements are met.  *Id*. at 730 (emphasis in original).  If the person or group with the largest financial interest meets Rule 23's requirements, they become the presumptive lead plaintiff.  *Id*.  The last step of the process is to give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's representations that it satisfies the requirements of Rule 23.  *Id*.

## A.   Procedural Requirements

Both the O'Hern Group and the Atlas Investors have complied with the procedural requirements.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).  The motions for appointment as lead plaintiff were both filed on December 11, 2007, within 60 days of the published notice.  Additionally, all the individual members of the groups have filed certifications along with their motions.  *See DePalma Dec.*, Ex. A; *Declaration of Philip Gordon, "Gordon Dec.,"* Ex. 2 (Docket No. 17-3).

## B.   Largest Financial Interest

PSLRA's requirement that the presumptive lead plaintiff have the "largest financial interest in the relief sought by the class" means the district court must compare the financial stakes of the various plaintiffs and determine which has the most to gain from the lawsuit.  *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).

**Memorandum Decision and Order- Page 6**

The O'Hern Group, consisting of brothers James and John O'Hern, claim aggregate losses of $92,589.75.[4] *DePalma Dec.*, Ex. C.   The Atlas Investors[5] claim aggregate losses of $181,469.20.  *Gordon Dec.*, Ex. 3.

The deciding question for the determination of who will serve as lead plaintiff is whether a group of unrelated investors[6] are able to aggregate their losses so that they have the largest financial interest in the litigation.

The PSLRA expressly states the presumptive lead plaintiff may be a  "person or group of persons."  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  What it does not state is whether individuals, particularly unrelated individuals, may aggregate their losses as a group for the purpose of becoming the lead plaintiff.  *See In re Cavanaugh*, 306 F.3d 726, 731 n.8 (9th Cir. 2002) (noting that although the statute states a "group of persons" can serve as a lead plaintiff, the court would not be determining in that case whether a group could aggregate losses to satisfy the "largest financial interest" requirement).

The O'Hern Group contends that the only reason for the Atlas Investors existence as a "group" is to serve as a "vehicle for counsel to artificially increase the amount of investor losses."  *O'Hern Group's Response Memorandum*, p. 5 (Docket No. 23).  It is also pointed out that two members of the Atlas Investors group were members of another group, represented by

---

[4]  James O'Hern claims losses of $78,202.99; John O'Hern claims losses of $14,386.76.  James O'Hern has the largest individual amount of losses.

[5]  As noted earlier, two members of the "Atlas Investors" group, Robert B. Stonesifer and Michael Kipphut, were previously part of the now-withdrawn "Kipphut Movants" group.  The Kipphut Movants claimed aggregate losses of $54,386.70.

[6]  The members of the Atlas Investors group claim the following losses:  Frank and Margaret Cardy, $68,510.00; Laurence Wang, $35,900.00; Jacob Shank, $11,450.00; Howard Nair,  $11,368.00; Michael Kipphut, $26,594.20; and Robert Stonesifer, $26,647.00.  *See Gordon Dec.*, Ex. 3.

different counsel,[7] just hours before the filing of the Atlas Investors' motion.  Lastly, the O'Hern Group argues that permitting groups like the Atlas Investors to aggregate losses of unrelated individuals allows lawyers to direct litigation and is problematic when there is no established mechanism for making lead plaintiff decisions.

The Atlas Investors group maintains that a group such as itself is advantageous because it is far less likely that any potential defenses would successfully rebut a finding of typicality.  It also argues that the class is better represented and stronger when the lead plaintiff is a group. The group also cites to several cases that have explicitly rejected the need for pre-litigation relationships and have appointed groups of unrelated investors as lead plaintiffs.  *See Atlas Investors' Reply Memorandum*, p. 4 (Docket No. 30).

Some courts will not aggregate the losses of a group of unrelated persons so that group may serve as lead plaintiff.  These courts observe that one of the principal purposes of the PSLRA was to "prevent lawyer-driven litigation and to allow for institutional plaintiffs with big financial stakes to serve as lead plaintiff and control the litigation."  *Ruland v. InfoSonics Corp.*, 2006 WL 3746716, *3 (S.D. Cal. Nov. 7, 2006).  *See also In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304 (S.D.N.Y. 2001).  Interpreting the word "group" to include an unrelated group of individuals does not further these objectives.  *Ruland v. InfoSonics Corp.*, 2006 WL 3746716, *3 (S.D. Cal. Nov. 7, 2006).  *See also Sakhrani v. Brightpoint, Inc.*, 78 F. Supp. 2d 845, 853 (S.D. Ind. 1999) (finding it was not an accurate interpretation of PSLRA to select a group of investors "who have the largest aggregate losses but who have nothing in common with one another

---

[7]  The Kipphut Movants' lead counsel was Federman & Sherwood and liaison counsel was Gordon Law Offices.  (Docket No. 16).  Federman and Sherwood is now listed as "additional counsel" for the Atlas Investors group.

**Memorandum Decision and Order- Page 8**

beyond their investment" as lead plaintiff); *In re E.Spire Commc'ns, Inc. Sec. Litig.*, 231 F.R.D. 207, 213 (D. Md. 2000) (a "group of persons" under PSLRA "should consist of more than a mere assemblage of unrelated persons who share nothing other than the fact that they suffered losses and entered into retainer agreements with the same attorneys"); *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1153-54 (N.D. Cal. 1999) (adopting a narrow definition of "group" to mean individuals who had a meaningful relationship preceding the litigation and who are united by more than the mere happenstance of having bought the same securities).

Other courts have allowed unrelated individuals to form a group and aggregate their losses. *In re Universal Access, Inc. Sec. Litig.* took a plain meaning approach to interpreting the statute. 209 F.R.D. 379 (E.D. Tex. 2002). Noting that the PSLRA expressly stated "person or group of persons," that court appointed a group as lead plaintiff because it was appropriate under the statute and "sometimes favored in light of the diversity of experience and interests of group members." *Id*. at 384.[8] *See also In re Advanced Tissue Sci. Sec. Litig.*, 184 F.R.D. 346 (S.D. Cal. 1998) (appointing "sub-group" of six unrelated individuals as lead plaintiff out of a group consisting of 250 members). To combat the concern that a group of unrelated individuals will not be able to manage the litigation effectively, some courts have taken a case-by-case approach and allowed a group to serve as lead plaintiff only upon a showing of how the group can effectively manage the litigation. *See In re Versata, Inc. Sec. Litig.*, 2001 WL 34012374 (N.D. Cal. Aug. 20, 2001) (noting group had shown it had a regular meeting calendar, a procedure to resolve disagreements, etc.); *Local 144 Nursing Home Pension Fund v. Honeywill Int'l, Inc.*, 2000 WL 33173017 (D.N.J. Nov. 16, 2000) (same). *See also Schonfield v. Dendreon Corp.*,

---

[8] Notably, in that case, the group that was appointed as lead plaintiff included an individual whose losses alone were larger than the aggregated losses of the other group competing for lead plaintiff status. *Id*.

2007 WL 2916533, *2 (W.D. Wash. Oct. 4, 2007).

It is clear that groups may be appointed as lead plaintiff under PSLRA.  What remains undecided by the Ninth Circuit is whether a group of unrelated individual can aggregate their losses for the purposes of determining who has the largest financial interest.  The Court finds the former cases cited above to be more persuasive will not aggregate the losses of a group that does not have a pre-existing relationship.  The PSLRA was enacted to combat a race to the courthouse by plaintiffs' lawyers in class action lawsuits.  *See In re E.Spire Commc'ns, Inc. Sec. Litig.*, 231 F.R.D. 207, 210 (D. Md. 2000) (citing S.Rep. No. 104-98 (1995) reprinted in 1996 U.S.C.C.A.N. at 679).  The Atlas Investors appear to be purely lawyer-driven.  Two of the members were members of another group, with different counsel, four hours prior to the filing of the Atlas Investors' motion.  There is no connection between the individuals in this group.  When a group does not have a pre-existing relationship, appointing that group as lead plaintiff would not best serve the class.  It would also defeat the PSLRA's purpose to prevent lawyer-driven litigation.  The Court finds that the O'Hern Group[9] has the largest financial interest in the pending litigation and has a pre-existing familial relationship as brothers.

---

[9]  At the hearing held March 11, 2008, the Atlas Investors claimed that James O'Hern had purchased 300,000 shares of stock pre-class period and therefore he made a profit.  Courts typically apply the "Olsen-Lax" factors to determine who has the largest financial interest.  *See Richardson v. TVIA, Inc.* 2007 WL 1129344 (N.D. Cal. April 16, 2007).  These factors consider the number of shares purchased *during the class period*, the number of net shares purchased *during the class period*, the total net funds purchased *during the class period* and the approximate losses suffered.  *Id.* at *3.  Any pre-class period purchase of shares by James O'Hern is not relevant to the losses he claims he suffered from the decreased value in the shares purchased *during* the class period.

**Memorandum Decision and Order- Page 10**

C.    **Rule 23 Requirements**

Rule 23 requires that the Court find that:

> (1) the class is so numerous that joinder of all members is
> impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical
> of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the
> interests of the class.

The requirements of "typicality" and "adequacy" of representation are the key factors in

determining the appropriate lead plaintiff under the PSLRA.  *See In re Cavanaugh*, 306 F.3d

726, 730 (9th Cir. 2002).

The "typicality requirement" is satisfied when "the claims or defenses of the

representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).

The test of typicality is "whether other members have the same or similar injury, whether the

action is based on conduct which is not unique to the named plaintiffs, and whether other class

members have been injured by the same course of conduct."  *Hanon v. Dataproducts Corp.*, 976

F.2d 497, 508 (9th Cir. 1992).  In cases arising under the PSLRA, courts have found the

typicality requirement satisfied when the lead plaintiff's alleged injuries arise from "the same

course of conduct complained of by the other plaintiffs and his causes of actions are founded on

similar legal theories."  *Schonfield v. Dendreon Corp.*, 2007 WL 2916533, *4 (W.D. Wash. Oct.

4, 2007).

The O'Hern Group satisfies the typicality requirement because they purchased Atlas

Mining stock during the class period in reliance on Defendants' misrepresentations and

subsequently suffered damages.  The group's losses arise from the same course of conduct

complained of by the other plaintiffs.  Additionally, there is no evidence that the O'Hern Group is subject to any unique defenses.

The adequacy requirement is satisfied "if there are no conflicts between the representative and class interests and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation."  *Richardson v. TVIA, Inc.*, 2007 WL 1129344, *4 (N.D. Cal. 2007).   The O'Hern Group's interests appear aligned with those of the other class members and there is no evidence of conflict between the representative and class interests.  In reviewing the record, it appears the O'Hern Group has retained qualified and experienced attorneys.  *See Gordon Dec.*, Exs. 4-5.  Because the O'Hern Group satisfies the requirements of 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), it is the presumptive lead plaintiff.

**D.      Rebuttal of Lead Plaintiff Presumption**

The PSLRA provides that the lead plaintiff presumption may be rebutted upon proof that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The Atlas Investors attempt to rebut this presumption by arguing that the counsel chosen by the O'Hern Group, Lite DePalma, filed a "copy-cat" lawsuit with named plaintiff Daniel J. O'Hern, Sr. ("O'Hern Sr.")  The Atlas Investors claim that O'Hern Sr. had no standing to bring the class action and has not suffered any losses.  They claim the filing of this lawsuit by Lite DePalma is tantamount to a Rule 11 violation.  Secondly, the Atlas Investors believe that James O'Hern's listed trades in his certification and loss chart are incomplete.

In response to the first argument made by the Atlas Investors, the O'Hern group submits

**Memorandum Decision and Order- Page 12**

that the standing of O'Hern Sr. is irrelevant because he is not moving for lead plaintiff status.[10]

As to the second argument, the O'Hern Group submits its belief that the class period ended on

October 8, 2007, because the fraud was revealed prior to the opening of the market on October 9,

2007.  They maintain there is no requirement to reveal pre- and post-class period transactions.

      The Atlas Investors attack of the presumption favoring the O'Hern Group fails.  The

standing of O'Hern Sr. is not before the Court because he is not a member of the O'Hern Group.

Secondly, the Court agrees, as stated above in footnote 9, that any pre- or post-class period

transactions would be irrelevant in calculating losses.   Lastly, the Atlas Investors have not

offered proof that the O'Hern Group cannot "fairly and adequately protect the interests of the

class" or "is subject to unique defenses."  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

**E.**      **Selection of Counsel**

      The PSLRA provides that the most adequate plaintiff "shall, subject to the approval of

the court, select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v).  The

O'Hern Group has requested that the Court approve their selection of Lite DePalma as lead

counsel and Holland & Hart as liaison counsel.

      The O'Hern Group submits that Lite DePalma and Holland & Hart are very qualified

litigators with extensive experience in prosecuting complex securities actions.  *See DePalma*

*Dec.*, Exs. D and E.  Having reviewed both firm's resumes, the Court finds that Lite DePalma

and Holland & Hart are both sufficiently qualified and experienced to serve, respectively, as lead

and liaison counsel.  The Court will approve the lead plaintiffs' selection of counsel.

---

[10]  The O'Hern Group also submits that it believes the class period began in 2004 rather than on March 31,
2005 and if that is the case, O'Hern Sr. would have standing.

**Memorandum Decision and Order- Page 13**

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1)      Motion of the O'Hern Group to be Appointed Lead Plaintiff, and for Approval of Lead Plaintiff's Selection of Lead Counsel and Liaison Counsel (Docket No. 12), be **GRANTED;**

2)      The Kipphut Movants' Motion for Appointment of Lead Plaintiffs and for Approval of Choice of Lead and Liaison Counsel for the Class (Docket No. 13), be found **MOOT**;

3)      Motion of Rudy Rodriguez for Appointment of Lead Plaintiff and Approval of Selection of Lead Plaintiff's Choice of Lead Counsel and Liaison Counsel (Docket No. 15), be found **MOOT**;

4)      Motion of Atlas Investors to Appoint Lead Plaintiffs and Approve Lead Plaintiffs' Selection of Counsel (Docket No. 17), be **DENIED**.

DATED: March 25, 2008

_____
Honorable Mikel H. Williams
Chief United States Magistrate Judge

**Memorandum Decision and Order- Page 14**