B. Newal Squyres (ISB #1621)
Ted C. Murdock (ISB #5431)
HOLLAND & HART LLP
101 S. Capitol Blvd., Suite 1400
P.O. Box 2527
Boise, ID 83701
Telephone: (208) 342-5000
nsquyres@hollandhart.com
tmurdock@hollandhart.com

Joseph J. DePalma (*Pro Hac Vice*)
Katrina Carroll (*Pro Hac Vice*)
Jennifer Sarnelli *(Pro Hac Vice)*
LITE DEPALMA GREENBERG & RIVAS, LLC
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Telephone: (973) 623-3000
jdepalma@ldgrlaw.com
kcarroll@ldgrlaw.com
jsarnelli@ldgrlaw.com

**Attorneys for Lead Plaintiffs**

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| IN RE: | Civil Action No. 07-428-N-EJL |
| ATLAS MINING COMPANY, SECURITIES LITIGATION | |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ORDER: (1) CERTIFYING SETTLEMENT CLASS; (2) APPOINTING LEAD PLAINTIFFS AS SETTLEMENT CLASS REPRESENTATIVES; (3) APPOINTING SETTLEMENT CLASS COUNSEL; (4) PRELIMINARILY APPROVING SETTLEMENT; (5) PROVIDING FOR NOTICE; (6) APPOINTING CLAIMS ADMINISTRATOR AND (7) SCHEDULING FAIRNESS HEARING FOR FINAL APPROVAL OF SETTLEMENT**

## I.    INTRODUCTION

The Settling Parties have entered into a Settlement Agreement and Stipulation of Settlement ("Stipulation")[1] that will resolve the matters alleged in the above-captioned action as to Defendants Atlas Mining Company ("Atlas"); NanoClay and Technologies Inc. ("NanoClay"), a wholly-owned subsidiary and/or division of Atlas; and the following Individual Defendants: William T. Jacobson, Robert Dumont, Dr. Ronald Price and Barbara S. Suveg (collectively, the "Settling Defendants"). Lead Plaintiffs, James O'Hern and John O'Hern, submit this Memorandum of Law in Support of their Unopposed Motion for Entry of the Settling Parties' proposed Order:

(1)    Certifying a class for the purpose of settlement under Rule 23 of:

All Persons who purchased or acquired Atlas securities during the Settlement Class Period. The Settlement Class Period is between January 19, 2005 and October 8, 2007;[2]

(2)    Appointing Lead Plaintiffs as representatives of the Class;

(3)    Appointing Lead Counsel, Lite DePalma Greenberg & Rivas, LLC ("Lite DePalma") as Settlement Class Counsel and Holland & Hart LLP as liaison counsel for the Class;

(4)    Preliminarily approving the proposed Settlement as set forth in the Settlement Agreement and Stipulation;

---

[1] All capitalized terms that are not defined herein have the same meanings as set forth in the Stipulation dated as of September 3, 2009. Both the Settlement Agreement and Stipulation are attached to the Declaration of Katrina Carroll ("Carroll Decl.") as Exhibits 1 and 2, respectively.

[2] Excluded from the Settlement Class are Defendants, members of the immediate families of the Individual Defendants and the legal representatives, heirs, successors, or assigns of any such excluded person or entity (the defendants are Atlas; NanoClay and Technologies Inc; individual defendants William T. Jacobson, Robert Dumont, Dr. Ronald Price and Barbara S. Suveg, and; auditor defendant Chisholm, Bierwolf & Nilson, LLC ("CBN")).

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ORDER - 1**

(5)     Authorizing the form and manner of notice to be sent to the Settlement Class advising them of the proposed Settlement, Plan of Allocation, Lead Counsel's intended fee and expense application, and their rights with respect thereto;

(6)     Appointing Rust Consulting, Inc. as claims administrator; and

(7)     Scheduling a final hearing (the "Fairness Hearing") to consider final approval of the settlement, the Plan of Allocation of settlement proceeds, and the application by Lead Counsel for payment of attorneys' fees and expenses.  At the Fairness Hearing, Lead Plaintiffs will also move for a finding that Settling Defendants provided notice of proposed Settlement to the Attorney General of the United States and the attorneys general of the States as required by 28 U.S.C. § 1715(b).

For the reasons set forth herein, Lead Counsel respectfully urges the Court to enter the proposed Order submitted herewith.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

This is a securities class action on behalf of persons who purchased Atlas common stock between January 19, 2005 and October 8, 2007, inclusive ("Class Period").  On July 28, 2008, Lead Plaintiffs filed their First Amended Consolidated Complaint ("Complaint") alleging that all Defendants violated §10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and that the Individual Defendants violated §20(a) of the Exchange Act.[3]  The Complaint also names Atlas's independent auditor, CBN, as a Defendant.  CBN is not a party to this proposed Settlement.

---

[3] On March 25, 2008, the Court appointed investors James O'Hern and John O'Hern as Lead Plaintiffs pursuant to the procedure set forth in pursuant to § 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), as amended by Section 101(a) of the PSLRA.

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ORDER - 2**

Lead Plaintiffs allege that Defendants violated the federal securities laws by making false and misleading statements during the Class Period regarding Atlas's business and prospects in publicly disseminated press releases and SEC filings. These purportedly false and misleading statements concerned the extent of a deposit of valuable halloysite clay on Atlas property, the availability and quality of halloysite for sale, and claimed sales of halloysite. Lead Plaintiffs contend that, on October 9, 2007, Atlas admitted to the market that its prior financial statements for the fiscal years ended December 31, 2004, 2005 and 2006 were materially false and misleading and had to be restated. Similarly, Lead Plaintiffs assert that Atlas admitted restatements were necessary because Atlas had wrongfully inflated its revenues and under-reported net losses and long-term liabilities by improperly recognizing as revenues speculative sales of halloysite. Lead Plaintiffs further allege that when Defendants disclosed the truth about the Company's actual financial results, Class Members suffered damages as a result of the decline in the price of Atlas common stock.

After filing the operative complaint in July 2008, Lead Plaintiffs' counsel was contacted by Atlas's counsel to postpone the time for the Settling Defendants to answer or otherwise move as to the complaint, so that the parties could discuss the potential resolution of this matter. Lead Plaintiffs entered into a number of consecutive Stipulations with these Defendants extending their time to file a responsive pleading during protracted settlement negotiations which resulted in the proposed Settlement.

The first round of face-to-face settlement talks with Atlas took place on October 22, 2008. During those discussions, the parties discussed various issues, including the precarious financial condition of Atlas, making the prompt resolution of this matter in the interests of all parties involved. Thereafter, the parties participated in months of follow-up discussions, exchanging various offers and

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ORDER - 3**

counter-offers of settlement. On April 27, 2009, the Settling Parties and Atlas's insurance carriers (not parties to this matter) participated in mediation before Mediator Jed Melnick of JAMS in Philadelphia, Pennsylvania, where they reached an agreement-in-principle to settle the Litigation, subject to Court approval. Thereafter, the Lead Plaintiffs and Atlas entered into a Memorandum of Understanding, conducted additional negotiations and agreed to the terms and conditions of the proposed Settlement set forth in the Settlement Agreement and Stipulation.

### III.    SUMMARY OF THE SETTLEMENT

Lead Plaintiffs and their counsel have diligently litigated this action and after extensive arm's-length negotiations with the substantial assistance of Mediator Melnick have reached an agreement to settle this Litigation for $1,250,000 in cash, plus $75,000 to be used toward the costs of providing notice of the proposed Settlement to the Class. The parties agreed to the certification of a Settlement Class for purposes of this proposed Settlement. The proposed Settlement Class includes all purchasers of Atlas securities during the Class Period. After final approval of the proposed Settlement and payment of any attorneys' fees and expenses awarded, the cost of claims administration and payment of taxes due on the interest earned on the Settlement Fund, the balance will be distributed to Settlement Class Members who make valid claims. The method of distribution will be based on the proposed Plan of Allocation as outlined in the Notice of Pendency and Proposed Settlement of Class Action. *See* Exhibit A-1 to the proposed Order submitted herewith.

Lead Plaintiffs and their counsel have concluded, after a thorough investigation of the factual and legal issues in the Litigation, as well as the expense and risks of continued litigation,

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ORDER - 4**

that the substantial and certain monetary recovery obtained for the benefit of the Class is an

excellent result and is in the best interests of the Class.

## IV.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

The benefits of the proposed Settlement can be realized only through certification of the

Settlement Class.  In this case, the parties have stipulated, for settlement purposes only, to

certification of a Settlement Class consisting of:

> All Persons who purchased or acquired Atlas securities during the
> Settlement Class Period.  The Settlement Class Period is between January
> 19, 2005 and October 8, 2007.

> The United States Supreme Court has approved the concept of settlement
> classes. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620-22 (1997).
> Moreover, the Ninth Circuit and district courts within it, including this
> District, have repeatedly endorsed the use of class action procedures to
> resolve claims under the federal securities laws. *See, e.g., Huberman v.
> Tag-It Pacific Inc.*, 314 Fed. Appx. 59, 62-3 (9th Cir. 2009); *In re Micron
> Tech., Inc. Sec. Litig.*, 247 F.R.D. 627, 632-36 (D. Idaho 2007); *In re LDK
> Solar Securities Litig.*, 255 F.R.D. 519, 533 (N.D. Cal. 2009).  One court has
> stated, "[t]he law in the Ninth Circuit is very well established that the
> requirements of Rule 23 should be liberally construed in favor of class
> action cases brought under the federal securities laws." *Schneider v.
> Traweek*, No. CV-88-0905, 1990 WL 132716, at *6 (C.D. Cal. July 31,
> 1990).  Courts recognize that any doubt as to the propriety of certification
> should be resolved in favor of certifying the class because denying class
> certification will almost certainly terminate the action and be detrimental to
> the members of the class. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir.
> 1975).  "[C]lass actions commonly arise in securities fraud cases as the
> claims of separate investors are often too small to justify individual lawsuits,
> making class actions the only efficient deterrent against securities fraud.
> Accordingly, the Ninth Circuit and courts in this district hold a liberal view
> of class actions in securities litigation." *In re Adobe Sys., Inc. Sec. Litig.*,
> 139 F.R.D. 150, 152-53 (N.D. Cal. 1991) (citing *Harris v. Palm Springs
> Alpine Estates, Inc.*, 329 F. 2d 909, 913 (9th Cir. 1964)).  Thus, this Court
> should liberally construe the requirements of Rule 23 in favor of certifying
> the Settlement Class.

### A.   The Proposed Settlement Class Satisfies the Prerequisites of Rule 23

Even for a class certified solely for purposes of settlement, the court must ensure that the class and its proposed representatives meet the requirements of Rule 23. *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Rule 23(a) sets forth four prerequisites for certifying a class action: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Id.* at 953; *Johnson v. Aljian*, 257 F.R.D. 587, 589-90 (C.D. Cal. 2009). As explained below, the proposed Settlement Class satisfies all of these requirements.

### 1.   Rule 23(a)(1)—Numerosity: Joinder of All Class Members Is Impracticable

Rule 23(a)(1) requires that the class be so numerous as to make joinder of all class members "impracticable." Fed.R.Civ.P. 23(a)(1). Plaintiffs are not required to specify the number of class members exactly and the court is entitled to use common sense assumptions. *Perez-Funez v. Dist. Dir., I.N.S.*, 611 F. Supp. 990, 995 (C.D. Cal. 1984). There is no fixed number of class members which either compels or precludes the certification of a class. *Arnold v. United Artists Theatre Circuit*, 158 F.R.D. 439, 448 (N.D. Cal. 1994); *see also In re Cirrus Logic Sec.*, 155 F.R.D. 654, 656 (N.D. Cal. 1994) (25 member class held large enough to justify certification). Courts in this Circuit have assumed that the numerosity requirement is satisfied in securities cases involving nationally traded stocks. *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) ("[t]he Court certainly may infer that, when a corporation has millions of shares trading on a national exchange, more than 40 individuals purchased stock over the course of more than a year").

Atlas's records for the time period in question disclose that Atlas had millions of shares of common stock outstanding. Lead Plaintiff's damages expert estimates that approximately 9.8

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ORDER - 6**

million shares of Atlas publicly traded common stock were purchased by eligible Class Members

nationwide during the Settlement Class Period.  Therefore, it is clear that the Settlement Class is

so numerous as to make individual joinder impracticable, if not logistically impossible.  The

proposed Settlement Class satisfies the numerosity requirement of Rule 23(a).

> **2.      Rule 23(a)(2)—Commonality: Common Questions of Fact and
> Law Exist as to the Members of the Settlement Class**

Commonality under Fed.R.Civ.P. 23(a)(2) involves an inquiry into whether there are

questions of law or fact common to the class, and this " requirement is interpreted to require very

little." *In re Paxil Litigation*, 212 F.R.D. 539, 549 (C.D. Cal. 2003), *see also Rodriguez v.*

*Carlson*, 166 F.R.D. 465, 472 (E.D. Wash. 1996)(describing "permissive application" of Rule

23(a)(2)).  It is well established that the commonality requirement is satisfied if the claims of the

prospective class share even one central question of fact or law.  *See, e.g., Hanlon v. Chrysler*

*Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998).  The presence of factual variations among class

members will not defeat class certification, as, with respect to "a class of purchasers allegedly

defrauded over a period of time by similar misrepresentations, courts have taken the common

sense approach that the class is united by a common interest in determining whether a

defendant's course of conduct is in its broad outlines actionable." *Blackie*, 524 F.2d at 902.

Here, the Court would be asked to address a series of identical questions.  For example,

as alleged in the complaint, common questions of law and fact exist as to:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Atlas; and
- to what extent the members of the Class and Subclass have sustained damages and the proper measure of damages.

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED
MOTION FOR ORDER - 7**

*Yamner v. Boich*, No. C-92020597, 1994 WL 514035, at *4 (N.D. Cal. Sept. 15, 1994) ("These are the standard questions upon which federal courts have based the grant of class certification in numerous securities actions.").

Underlying these basic common questions is a common nucleus of operative facts pertaining to Defendants' alleged misrepresentations to the investing public causing Members of the Settlement Class to purchase Atlas's securities at inflated prices. These central fact issues and their consequences are common to all Settlement Class Members. Indeed, courts routinely recognize that securities actions alleging such a common course of conduct satisfy the commonality requirements of Federal Rule of Civil Procedure 23(a)(2). *See, e.g., Cirrus*, 155 F.R.D. at 657. Thus, the Settlement Class satisfies the commonality requirement of Fed.R.Civ.P. 23(a).

### 3.   Rule 23(a)(3)—Typicality: The Claims of Lead Plaintiffs are Typical of the Claims of the Class

Plaintiffs' claims satisfy the typicality requirement of Rule 23(a)(3) if they arise from the same event or course of conduct that gives rise to claims of other class members and the claims asserted are based on the same legal theory. *Schneider*, 1990 WL 132716, at *7. In *Hanlon*, the Ninth Circuit explained that "[u]nder [Rule 23's] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." 150 F.3d at 1020; *see also Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001) ("We do not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result form the same, injurious course of conduct."). The

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ORDER - 8**

purpose of the "typicality" requirement is to ensure that the named representatives' interests "align" with those of the class. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The test generally is "whether other members have the same or similar injury, whether the action is based on conduct that is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *A&J Deutscher Family Fund v. Bullard*, No. CV-85-1850, 1986 WL 14903, at *6 (C.D. Cal. Sept. 22, 1986) (*citing Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

Here, the typicality requirement is satisfied by the Lead Plaintiffs because their claims and those of the Settlement Class Members they seek to represent derive from the same set of operative facts. Lead Plaintiffs purchased shares of Atlas common stock during the Settlement Class Period, and, like the other Settlement Class Members, Lead Plaintiffs allege that they were damaged by those purchases. All Members of the Settlement Class were alleged victims of this common course of conduct by Defendants. As a result, the claims of the Lead Plaintiffs are typical of those of the Settlement Class.

### 4.    Rule 23(a)(4)—Adequacy of Representation: Lead Plaintiffs Will Adequately Protect the Settlement Class

Rule 23(a)(4) requires that plaintiffs must adequately protect the interests of the classes they seek to represent. Courts have established a two-prong test for his requirement. *See, e.g., Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). First, counsel for the class must be competent to undertake the particular litigation at hand. Second, there can be no antagonism or disabling conflict between the interests of the named class representative and the members of the class. Lead Plaintiffs easily satisfy both prongs of the adequacy test. First, they have retained attorneys with extensive experience in the area of securities litigation, Lite

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ORDER - 9**

DePalma, who have successfully prosecuted numerous class actions on behalf of injured investors across the country. There can be no legitimate dispute that Lead Counsel are capable of prosecuting this Litigation and, as conclusive proof of their adequacy, they have secured this proposed Settlement. As such, Lead Counsel should both be deemed adequate and appointed as Settlement Class Counsel pursuant to Rule 23(g).

The second requirement is also satisfied here because there is no antagonism between the proposed representative plaintiffs and the absent class members. *Lerwill,* 582 F.2d at 512. In fact, the proposed class representatives have the same claims as the members of the class they seek to represent. Accordingly, the interests of the Settlement Class will be fairly and adequately protected.

**B.      The Requirements of Rule 23(b) are Satisfied**

Plaintiffs are also required to satisfy the predominance and superiority requirements of Rule 23(b)(3), where the Court must determine whether "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Lead Plaintiffs satisfy these requirements.

**1.      Common Questions of Law and Fact Predominate**

Generally, common questions of law or fact are held to predominate if they represent a significant aspect of the case and can be resolved for all class members in a single adjudication. *See* 7A Charles A. Wright, Arthur A. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1778, at 528 (2d ed. 1986). Where a complaint alleges a "common course of conduct" that affects members of the class in the same manner, common questions predominate. *Blackie,* 524

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ORDER - 10**

F.2d at 905-08. Moreover, the Supreme Court has stated that predominance "is a test readily met in certain cases alleging consumer or securities fraud." *Amchem Products,* 521 U.S. at 625.

Defendants' conduct affected the Members of the Settlement Class in a similar manner through the false statements they made, which resulted in the inflation of the price of Atlas common stock purchased by the Settlement Class. The critical issues raised in this action are common to all Members of the Settlement Class and they will predominate in this case. Moreover, the fact that Settlement Class Members may not be identically situated is immaterial. The fact that different members of the proposed Settlement Class may have invested at different times and may have been exposed to different misrepresentations by Defendants, does not preclude a finding that common issues predominate because a continuous course of conduct has been alleged. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 914-15 (9th Cir. 1964).

In sum, where a complaint alleges a continuous course of conduct committed by defendants and directed against the members of a class, the issues which flow from that wrongful activity clearly predominate over any individual issues.

### 2.     A Class Action is Superior to Other Available Methods for Resolving this Controversy

Rule 23(b)(3) also requires the court to determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Courts have recognized that the class action device is superior to other available methods for the fair and efficient adjudication of controversies involving a large number of purchasers of securities injured by violations of the securities laws. Class actions are a "particularly appropriate and desirable" way of resolving securities claims. *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985). To determine the issue of "superiority," Rule 23(b)(3) the court must consider:

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ORDER - 11**

(A) the interest of the members of the class in individually controlling the prosecution... of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by ... members of the class; (C) the desirability ... of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

Each of these factors is satisfied in this case. The number of Settlement Class Members is far too numerous and the typical individual claim is likely to be too small for each individual Settlement Class Member to maintain a separate action. The class action device is the only viable vehicle by which the vast majority of persons injured by Defendants' wrongful conduct may obtain a remedy. As the Ninth Circuit stated in *Epstein v. MCA Inc.*, "it is difficult to imagine a case where class certification would be more appropriate. Without it, thousands of identical complaints by former [ ] shareholders would have to be filed - the very result the class action mechanism was designed to avoid." 50 F.3d 644, 668 (9th Cir. 1995), *rev'd on other grounds, Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367 (1996). Further, the nationwide geographical dispersion of the Settlement Class Members, based upon Atlas's active sale of the stock nationally on the OTC Bulletin Board, makes it desirable that litigation of the claims involved be concentrated in this forum.

Although Rule 23(b)(3) calls for consideration of manageability concerns in certifying a class, *Amchem* confirmed that manageability of a class action at trial is an irrelevant consideration in the context of a proposed settlement because there will be no trial. 521 U.S. at 620. Further, the Supreme Court has endorsed the superiority of the class action device for resolving securities claims:

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ORDER - 12**

> The aggregation of individual claims in the context of a classwide suit is an evolutionary response to the existence of injuries unremedied by the regulatory action of government.  Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved person may be without any effective redress unless they may employ the class-action device.

*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980).  In sum, judicial economy and best interests of the class members favor class certification.  For the reasons stated above, the proposed Settlement Class satisfies the requirements of Rule 23(b)(3).

## V.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

At this juncture, the Settling Parties request that the Court grant preliminary approval of the Settlement so that notice may be sent to the Class.  The Court will have before it more extensive pleadings submitted in support of the proposed Settlement at the Fairness Hearing and will then be asked to make a determination as to whether the Settlement is fair, reasonable, and adequate and should be finally approved.

### A.    The Court's Role in the Approval of a Class Action Settlement

Settlements of class actions require court approval.  Fed.R.Civ.P. 23(e).  This involves a two-step process and two hearings: a hearing concerning the court's preliminary fairness evaluation, and then, after notice to the Class is given, a second final approval hearing (the Fairness Hearing).  *In re M.L. Stern Overtime Litig.*, No. 07-CV-0118, 2009 WL 995864, at *3 (S.D. Cal., April 13, 2009)(describing approval process).  For purposes of preliminary approval, "[b]efore approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties and that the settlement, taken as a whole, is fair, reasonable and adequate

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ORDER - 13**

to all concerned parties." *Ficalora v. Lockheed California Co.*, 751 F.2d 995, 997 (9th Cir.1985); Fed.R.Civ.P. 23(e)(2).

To grant preliminary approval, the Court need only conclude that a settlement of the claims against the Settling Defendants on the agreed-upon terms is "potentially fair" for the purposes of providing notice and holding a future fairness hearing. *Acosta v. Trans Union*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (at preliminary approval stage, "the settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out."); *M.L. Stern*, 2009 WL 995864, at *4 (the court need only decide whether settlement is within a range of possible approval at this stage).

Here, the proposed Settlement meets all of these criteria for preliminary approval. As illustrated below, Lead Plaintiffs make a showing that the proposed Settlement is "potentially fair" to Members of the Settlement Class. Further, there is no evidence of collusion or overreaching. To the contrary, the proposed Settlement was the product of extensive arm's-length negotiations conducted by experienced counsel with the assistance of a highly respected mediator with extensive experience mediating complex actions. As courts have observed, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchel v. Federal Express Corp.*, Nos. C03-2659, C 03-2878, 2007 WL 1114010 at * 4 (N.D. Cal. Apr. 13, 2007); *see also In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable").

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ORDER - 14**

**B.      Factors to Be Considered in Granting Preliminary Approval and Ultimately, Final Approval**

Because a court on preliminary approval is asked to determine whether a settlement is within the range of possible approval, reference to the factors considered in granting final approval are relevant. A court should approve a class action settlement if "it is fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). In consideration of whether a settlement is fundamentally fair, courts consider various factors including, but not limited to:

- the strength of plaintiffs' case;
- the risk, expense, complexity, and likely duration of further litigation;
- the risk of maintaining class action status throughout the trial;
- the amount offered in settlement;
- the extent of discovery completed, and the stage of the proceedings;
- the experience and views of counsel;
- the presence of a governmental participant; and
- the reaction of the class members to the proposed settlement.

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *Hanlon,* 150 F.3d at 1026. The Ninth Circuit "has long deferred to the private consensual decision of the parties" regarding the amount of settlement and "put[s] a good deal of stock in the product of an arms-length non-collusive negotiated resolution." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). The district court must examine the relevant factors, but is not required to reach an ultimate conclusion on the merits of the dispute, "'for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'" *Id.* at 964 (quoting *Officers for Justice,* 688 F.2d at 625. Here, a preliminary examination demonstrates that the criteria for final approval are met.

**1.   Strength of Plaintiffs' Case/ Amount Of Settlement/ Risks of Litigation vs. Benefit of a Certain Recovery**

An evaluation of the benefits of an immediate settlement of $1.25 million, together with $75,000 in notice costs, must be tempered by a recognition that any compromise involves concessions on the part of all of the settling parties. *See West Publishing*, 563 F.3d at 965 ("parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value"). Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (citations omitted). *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 617-19 (N.D. Cal. 1979).

Here, the proposed Settlement eliminates the risks associated with continued litigation and eliminates the substantial risk of no recovery after several more years of litigation. This risk of no recovery is highly pronounced here, as Atlas is a relatively small company and its financial condition would not permit protracted litigation to continue. Lead Plaintiffs' initial damage analysis indicates that provable damages are within the range of $3,522,287 through $5,383,594. The settlement proceeds represent approximately 23% to 36% of provable damages in this case, exclusive of Court-approved attorney's fees and costs.

Were this case to proceed in litigation, in order to prevail on a claim under Section 10(b) and Rule 10b-5, Lead Plaintiffs would have to prove that Defendants made: (1) a misrepresentation or omission; (2) of material fact; (3) with scienter; (4) in connection with the purchase or sale of securities; (5) upon which Lead Plaintiffs relied; and (6) which proximately

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ORDER - 16**

caused Lead Plaintiffs' injury. 15 U.S.C. § 78j; 17 C.F.R. § 240.10b-5; *In re Adaptive Broadband Sec. Litig.*, No. C 01-1092, 2002 WL 989478, *8 (N.D. Cal. April 2, 2002). While Lead Plaintiffs are confident that they could proceed on those claims, this confidence must be tempered by the numerous litigation uncertainties. Moreover, beyond the litigation uncertainties, the parties raised, discussed and analyzed concerns regarding whether Atlas had the financial wherewithal to withstand protracted litigation.

In mediation, the Settling Defendants vehemently denied any and all liability, alleging any statements set forth by Atlas were well-founded and true at the time they were made. As a result, Settling Defendants asserted that Lead Plaintiffs could not establish that Defendants made any actionable false or misleading statements with the requisite scienter required under the federal securities laws. Defendants further claimed that the Class would not be able to prove an efficient market or reliance on the purported representations nor could they demonstrate loss causation for many of the statements alleged. In short, Lead Plaintiffs faced numerous obstacles in proving that the Settling Defendants were liable and establishing damages. There was no certainty, given Settling Defendants' vigorously asserted defenses, that Lead Plaintiffs would prevail on either liability or damages at the amount asserted. The proposed Settlement eliminates these and many other risks of continued litigation.

The immediacy and certainty of a recovery is another factor for the court to balance in determining whether the proposed Settlement is fair, adequate and reasonable. *E.g., Mego Fin.*, 213 F.3d at 458. Approval of the proposed Settlement will mean a present recovery for eligible claimants. If not for this proposed Settlement, the case would have continued to discovery, summary judgment and perhaps to trial. While Lead Counsel believe they had a reasonable

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ORDER - 17**

chance of prevailing on the merits, they would have to incur additional and very substantial expenses due to discovery, retention of experts, summary judgment and trial would severely deplete any possible recovery. Accordingly, settlement of the Litigation at this time will ensure an immediate recovery for the Class.

### 2. The Stage of the Proceedings

The stage of the proceedings must also be considered in determining fairness, reasonableness and adequacy of a settlement. *Hanlon*, 150 F.3d at 1026, *Torrisi*, 8 F.3d at 1375. However, as the Ninth Circuit reiterated, "in the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about the settlement." *Mego Fin*, 213 F.3d at 459 (*internal citations omitted*). While there has been no formal discovery, Lead Counsel conducted an extensive investigation in connection with the preparation of the operative Complaint that included extensive documentary investigation, a review of all relevant SEC filings, press releases, news articles and analyst reports. Lead Counsel also worked with consultants in accounting, materiality, loss causation and damages with respect to the issues in this case. Further, settlement discussions began only after Lead Counsel had filed their amended complaint and thoroughly evaluated the risks of litigation. The proposed Settlement was reached through the assistance of an experienced mediator, and once the agreement was reached in principle, Lead Counsel also examined many documents produced by the Settling Defendants in the confirmatory discovery process. The parties have a thorough understanding of the strengths and weaknesses of their respective cases.

### 3.    Experienced Counsel's Recommendation

Significant weight should be attributed to the belief of experienced counsel that

settlement is the best interest of the class. *Boyd*, 485 F. Supp. at 622 (recommendations of

plaintiffs' counsel should be given a presumption of reasonableness). Here, Lead Counsel has

extensive experience in securities litigation and fully supports the proposed Settlement. It is

Lead Counsel's informed opinion that, given the uncertainty and substantial expense of pursuing

the claims through trial, the settlement is fair, reasonable and adequate and in the best interests of

the Class in light of the circumstances of this Litigation.

## VI.    THE PROPOSED NOTICE PROGRAM IS APPROPRIATE

The parties have negotiated the form of a notice (the "Notice") and a summary notice (the

"Summary Notice") to be disseminated to the Settlement Class. The Notice and Summary

Notice are attached to the proposed Order as Exhibits A-1 and A-3 respectively. The Notice will

be sent by mail to all Settlement Class Members who can be identified with reasonable effort and

an extensive broker database maintained by Rust Consulting. The Notice and Summary Notice

will inform Settlement Class Members of the terms of the proposed Settlement, their rights in

connection with the proposed Settlement, the Plan of Allocation and the date of the Fairness

Hearing, at which the Court will consider final approval of the Settlement, Plan of Allocation,

and attorneys' fees and expenses. The Notice has been drafted to comply with the provisions of

the PSLRA and the Federal Rules. *See* 15 U.S.C. § 78u-4(a)(7), Fed. R. Civ. P. 23(c)(2)(b); *see*

*also*, *West Publishing*, 563 F.3d at 962 ("[s]ettlement notices are supposed to present information

about a proposed settlement neutrally, simply, and understandably"). Along with the Notice,

Settlement Class Members will receive a Claim Form on which to provide their purchase and

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED**
**MOTION FOR ORDER - 19**

sale information for their purchases and sales of Atlas stock. This document is attached to the proposed Order as Exhibit A-2. Settlement Class Members who wish to share in the settlement proceeds must complete and mail their Claim Form to the Claims Administrator to determine eligibility.

The parties have agreed to use the traditional methods for notifying Settlement Class Members: notification by mail and by publication in a national newspaper focusing on investors. Upon entry of the Preliminary Approval Order, the Claims Administrator will mail the Notice and Claim Form to Settlement Class Members who can be identified with reasonable effort, including those from stock transfer records, and to a sizable database of brokers. Lead Counsel will cause the Summary Notice to be published in the national edition of the *Investor's Business Daily* and *The Wall Street Journal*. The parties believe that notice by mail and publication is the best notice practicable under the circumstances, is typical of the notice given in other securities class actions and satisfies the requirements of due process. *See Torrisi*, 8 F. 3d at 1374. In addition, the Notice and Claim Form will be posted on the Claims Administrator's Web site.

Upon notification of the proposed Settlement, Settlement Class Members have three choices: (1) remain in the Settlement Class and share in the settlement proceeds by submitting a Claim Form; (2) exclude themselves from the proposed Settlement by "opting out" of the Settlement Class, in which case they will not participate in the settlement recovery and will retain their individual claims against Settling Defendants; or (3) object to the proposed Settlement, Plan of Allocation, and/or the attorneys' fees application. In order to participate in the proposed Settlement, Settlement Class Members must submit their Claim Forms within the time specified. Settlement Class Members who wish to exclude themselves from the Settlement

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ORDER** - 20

must submit a timely request for exclusion. Any Settlement Class Member who wishes to object to the proposed Settlement must file and serve an objection in accordance with the procedures in the Notice. Objecting parties can submit a brief in opposition to any aspect of the proposed Settlement and can appear at the Fairness Hearing to present their arguments. This Court should find that the Notice and the procedures for its dissemination are reasonably calculated to provide notice of the proposed Settlement to the Settlement Class.

### VII.   THE PLAN OF ALLOCATION SHOULD BE PRELIMINARILY APPROVED BY THE COURT

Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23 of the Federal Rules of Civil Procedure is governed by the same standards of review applicable to the settlement as a whole: the plan must be fair, reasonable and adequate. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992). Here, the Plan of Allocation (the "Plan") contained within the Notice satisfies these requirements.

District courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members ...equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978). In order to develop a fair distribution plan, Lead Counsel asked their damages consultant to assist in drafting a Plan that would result in a fair distribution of the available settlement proceeds. Lead Plaintiffs' expert used information provided by Lead Counsel along with available economic evidence to develop the Plan currently before the Court for preliminary approval. Lead Counsel maintains that the Plan will equitably apportion the net settlement proceeds among eligible Settlement Class Members. The Plan should be preliminarily approved.

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ORDER - 21**

## VIII.   PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a Fairness Hearing date, dates for mailing and publication of the Notice and Summary Notice and deadlines for objecting to the Settlement, opting out of the Class, and filing papers in support of the Settlement.  The parties propose the following schedule:

| Notice mailed to the Class | 30 days after the entry of the Order Preliminarily Approving Settlement and Providing for Notice ("Notice Date") |
|---|---|
| Summary Notice published | 10 days from the Notice Date |
| Deadline for objecting to the proposed Settlement | 45 days from the Notice Date |
| Deadline for opting out of the Class | 45 days from the Notice Date |
| Deadline for filing papers in support of Final Approval, including Lead Counsel's Fee Application | 14 days before the final approval hearing |
| Final Fairness Hearing | At the Court's convenience, but at least 14 days after the date for Class Members to opt-out or object to the Settlement |

This schedule is similar to those used and approved by numerous courts in class action settlements and provides due process to Settlement Class Members with respect to their rights concerning the settlement.  *See Torrisi*, 8 F.3d at 1374-75.

## IX.   CONCLUSION

For the reasons set forth above, Lead Plaintiffs respectfully request the Court to preliminarily approve the proposed Settlement, certify the Settlement Class and allow Lead Counsel to notify Settlement Class Members of the terms of the proposed Settlement.

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ORDER - 22**

September 15, 2009                    Respectfully submitted,

**HOLLAND & HART LLP**

By:    \s\    *Ted C. Murdock*
           B. Newal Squyres (ISB #1621)
           Ted C. Murdock (ISB #5431)

**LITE DEPALMA GREENBERG
& RIVAS LLC**
Joseph J. DePalma
Katrina Carroll
Jennifer Sarnelli

***Attorneys for Lead Plaintiffs***

4609025_1.DOC

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED
MOTION FOR ORDER** - 23

## CERTIFICATE OF SERVICE

    I hereby certify that on this 15th day of September 2009, I caused to be served an electronic true and correct copy of the foregoing to the following:

Bruce Bistline, Esq.
Phillip Howard Gordon, Esq.
Email: bbistline@gordonlawoffices.com
        pgordon@gordonlawoffices.com

Charles Matthew Andersen
Courtney R. Beaudoin
Email: cma@winstoncashatt.com
        crb@winstoncashatt.com

W. Adam Duerk
Email: aduerk@bigskylawyers.com

Stephen R. Thomas, Esq.
Email: srt@moffatt.com

Matthew A. Carvalho
Angelo J. Calfo
Email: mcarvalho@yarmuth.com
        smeyer@yarmuth.com
        acalfo@yarmuth.com
        srasmussen@yarmuth.com

Kevin J. Scanlan, Esq.
Bryan A. Nickels, Esq.
Email: kjs@hallfarley.com
        ban@hallfarley.com

Thomas A. Banducci, Esq.
Wade L. Woodard, Esq.
Email: tbanducci@bwslawgroup.com
        wwoodard@bwslawgroup.com

Joseph J. DePalma
Katrina Carroll
Jennifer Sarnelli
Email: jdepalma@ldgrlaw.com
        kcarroll@ldgrlaw.com
        jsarnelli@ldgrlaw.com

William G. Dryden
Email: wgd@elamburke.com
        buff@elamburke.com

Philip M. Guess
Richard A. Kirby
Email: philg@klgates.com
        richard.kirby@klgates.com

Lewis S. Kahn
Kim E. Miller
Email: lewis.kahn@kgscounsel.com
        kim.miller@kgscounsel.com

Nathan M. Longenecker
Email: longenecker@twhlaw.com
        fisk@twhlaw.com

Laurence M. Rosen
Email: lrosen@rosenlaw.com

Jennifer F. Sherrill
Email: jfs@federmanlaw.com

Kim C. Stanger
Email: kstanger@hawleytroxell.com

Thomas G. Walker
Email: twalker@cosholaw.com

                                /S/
                      for HOLLAND & HART LLP

4613908_1.DOC