B. Newal Squyres (ISB #1621)
Ted C. Murdock (ISB #5431)
HOLLAND & HART LLP
101 S. Capitol Blvd., Suite 1400
P.O. Box 2527
Boise, ID 83701
Telephone: (208) 342-5000
nsquyres@hollandhart.com
tmurdock@hollandhart.com

Joseph J. DePalma (*Pro Hac Vice*)
Katrina Carroll (*Pro Hac Vice*)
Jennifer Sarnelli *(Pro Hac Vice)*
LITE DEPALMA GREENBERG LLC
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Telephone: (973) 623-3000
jdepalma@ldgrlaw.com
kcarroll@ldgrlaw.com
jsarnelli@ldgrlaw.com

**Attorneys for Lead Plaintiffs**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| | ) |
| | ) |
| IN RE: | ) Civil Action No. 07-428-N-EJL-MHW |
| | ) |
| ATLAS MINING COMPANY, | ) **PLAINTIFFS' OMNIBUS OPPOSITION** |
| SECURITIES LITIGATION | ) **TO THE MOTIONS TO DISMISS FILED** |
| | ) **BY THE CBN DEFENDANTS (Dkts. 147/148)** |
| | ) **AND IN SUPPORT OF PLAINTIFFS'** |
| | ) **CROSS MOTION TO STRIKE** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................

PRELIMINARY STATEMENT .......................................................................1

ARGUMENT ...................................................................................................3

   I.  CERTAIN EXTRANEOUS EVIDENCE OFFERED BY CBN SHOULD
       BE STRICKEN FROM THE RECORD .................................................3

   II. THE COMPLAINT ADEQUATELY PLEADS EXCHANGE ACT
       CLAIMS AGAINST THE CBN DEFENDANTS ..................................6

    A.  STANDARD OF REVIEW ...........................................................6

    B.  THE LEGAL ELEMENTS OF SECURITIES FRAUD ................................7

       1.  Plaintiffs Have Sufficiently Alleged that Atlas's Financial
          Statements Were Materially False and Misleading and in
          Violation of GAAP ................................................................8

          a.  Material Overstatement of Revenues ..................................8

          b.  Nature of Atlas's Halloysite Operations ...........................12

          c.  Materiality ...........................................................14

       2.  The Fraud At Atlas Was So Egregious That CBN Cannot Avoid
          A Finding of Scienter By Claiming Ignorance .....................................16

          a.  Caselaw concerning Scienter premised on Auditor
             Recklessness ...........................................................16

          b.  CBN Acted with Scienter .................................................18

             i.  New Allegations Concerning CBN's Business Model
                And CBN's Relationship With Atlas ...........................19

             ii.  Reckless disregard for accounting/GAAP violations ..................20

             iii.  GAAS violations, red flags and the overwhelming
                 fraud risk at Atlas .......................................................22

             iv.  The Special Committee Investigation, Restatements and
                SEC Investigation Support and Inference of Scienter ................27

v. Allegations Concerning the PCAOB Investigations of CBN ...........................................................................................28

3.   The Second Amended Complaint Adequately Pleads Scienter With Respect To Defendants Todd Chisholm And Troy Nilson...........30

4.   The SAC Sufficiently Alleges Loss Causation.....................................32

III.   PLAINTIFFS' CLAIMS AGAINST DEFENDANTS CHISHOLM AND NILSON ARE NOT TIME BARRED.......................................................................34

A.   The Claims Were Filed Within The Limitations Period .....................................34

B.   Relation Back ....................................................................................................35

1.   Notice ...................................................................................................36

2.   Prejudice ..............................................................................................37

3.   Mistake .................................................................................................38

CONCLUSION ..............................................................................................................40

## TABLE OF AUTHORITIES

**Cases**

Arpin v. Santa Clara Valley Transp. Agency,
261 F.3d 912  (9th Cir. 2001) ................................................................................ 3

Barrie v. Intervoice-Brite, Inc.,
397 F.3d 249  (5th Cir. 2005) ................................................................................ 10

Benson  v. Applied Signal Tech., Inc.,
527 F.3d 982 (9th Cir. 2008) ................................................................................ 31

Blackhawk v. City of Chubbuck,
No. CV-04-629 E, BLW, 2005 WL 3244406  (D. Idaho Nov. 21, 2005) ............................. 37,38

Brink v. First Credit,
57 F.Supp.2d 848  (Dist. Ariz. 1999)................................................................... 36,38

Burritt v. NutraCea,
No. CV-09-00406-PHX-FJM 2010 WL 668806  (D. Ariz. Feb. 25, 2010)............................. 21

DSAM Global Value Fund v. Altris Software, Inc.,
288 F.3d 385  (9th Cir. 2002) ................................................................................ 16

Dura Pharm. v. Broudo,
544 U.S. at 342 (2005)……………………………………………………………………….32,33
Fidel v. Farley,
392 F.3d 220 (6th Cir. 2004) ................................................................................ 9

G.F. Co. v. Pan Ocean Shipping Co., Ltd.,
23 F3d 1498  (9th Cir. 1994) ............................................................................... 36,38

In re Ambac Fin. Group, Inc. Secs. Litig.,
No. 08 Civ. 411(NRB), 2010 WL 727227  (S.D.N.Y. Feb. 22, 2010) .................................... 10

In re Amgen Inc. Secs. Litig.,
544 F.Supp.2d 1009  (C.D. Cal. 2008) ................................................................... 13

In re Burlington Coat Factory Sec. Litig.,
114 F.3d 1410  (3d Cir. 1997)................................................................................. 10

*In re Cardinal Health Inc. Secs. Litigs.*,
    426 F.Supp.2d 688  (S.D. Ohio 2006) ........................................................................ 29

*In re Cendant Corp. Litig.*,
    60 F. Supp. 2d 354 (D.N.J. 1999) ............................................................................. 18

*In re Cooper Secs. Litig.*,
    No. SACV06-00169-CJC(RNBx), 2010 WL 768936  (C.D. Cal. March 4, 2010) ................. 15

*In re Countrywide Fin. Corp. Secs. Litig.*,
    No. CV-07-05295-MRP (MANx) 2009 WL 943271  (C.D. Cal. April 6, 2009) ...................... 5

*In re Daou Sys., Inc.*,
    411 F.3d 1006  (9th Cir.2005) .................................................................................. 32

*In re Digi Int'l, Inc. Sec. Litig.*,
    6 F. Supp. 2d 1089 (D. Minn. 1998) .......................................................................... 10

*In re First Merchants Acceptance Corp. Sec. Litig.*,
    No. 97 CV 2715, 1998 WL 781118  (N.D. Ill. Nov. 2, 1998) ........................................... 18

*In re Genentech, Inc. Sec. Litig.*,
    No. C-88-4038-DLJ, 1990 WL 32070  (N.D. Cal. Jan. 19, 1990) ...................................... 10

*In re Gottheiner*,
    703 F.2d 1136  (9th Cir. 1983) ................................................................................. 37

*In re Immune Response Secs. Litig.*,
    375 F.Supp.2d 983 (S.D.Cal. 2005) ........................................................................... 14

*In re Lernout & Hauspie Sec. Litig.*,
    230 F. Supp. 2d 152 (D. Mass 2002) ......................................................................... 18

*In re Majesco Secs. Litig.*,
    No. CIV A 05CV-3557 PGS, 2006 WL 2846281 (D.N.J. Sept. 29, 2006) ........................... 10

*In re McKesson HBOC, Inc. Secs. Litig.*,
    126 F.Supp.2d 1248  (N.D. Cal. 2000) ....................................................................... 21

*In re MicroStrategy, Inc. Securities Litig.*,
    115 F.Supp.2d 620  (E.D. Va. 2000) .......................................................................... 21

*In re New Century*,
    588 F.Supp.2d 1206 (C.D. Cal. 2008) ...................................................................... 32.33

*In re Suprema Specialties, Inc. Sec. Litig.*,
    438 F.3d 256  (3d Cir. 2006) ............................................................................... passim

In re Taleo Corp. Secs. Litig.,
    No. C09-00151 JSW, 2010 WL 597987  (N.D. Cal. Feb. 17, 2010) .......................................... 6

In re WorldCom, Inc. Sec. Litig.,
    No. 02 Civ. 3288, 2003 WL 21488087  (S.D.N.Y. June 25, 2003) ......................................... 18

Johns Hopkins University v. Hutton,
    422 F.2d 1124  (4th Cir. 1970) ....................................................................................... 15

Kilkenny v. Arco Marine, Inc.,
    800 F.2d 853 (9th Cir. 1986) ......................................................................................... 39

Knievel v. ESPN,
    393 F.3d 1068  (9th Cir. 2005) ....................................................................................... 4

Korn v. Royal Caribbean Cruise Line, Inc.,
    724 F.2d 1397  (9th Cir. 1984) ................................................................................... 36,37

Lee v. City of Los Angeles,
    250 F.3d 668  (9th Cir. 2001) ......................................................................................... 6

Levenstein v. Salafsky,
    164 F.3d 345  (7th Cir. 1998) ......................................................................................... 5

Lormand v. US Unwired,
    565 F.3d 228,  (5th Cir. 2009) ....................................................................................... 7

Mackay v. Four Rivers Packing Co.,
    179 P.3d 1064,  (Idaho 2008) ....................................................................................... 5

Marksman Partners, L.P. v. Chantal Pharm. Corp.,
    927 F. Supp. 1297  (C.D. Cal. 1996) ............................................................................. 25

No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.,
    320 F.3d 920 (9th Cir.2003) ......................................................................................... 15

Operating Local 649 Annuity Trust Fund v. Smith Barney Fund,
    No. 07-5125-cv, 2010 WL 520896  (2d Cir. Feb. 16, 2010) .............................................. 15

Oran v. Stafford,
    226 F.3d 275  (3d Cir. 2000).......................................................................................... 15

Pearce v. Bank of Am. Home Loans, No. C ,
    09-3988 JF, 2010 WL 689798  (N.D. Cal. Feb. 23, 2010) .................................................. 4

Provenz v. Miller,
    102 F.3d 1478  (9th Cir. 1996) .................................................................................. 10,14

Reiger v. PricewaterhouseCoopers, LLP,
    117 F.Supp.2d 1003 (S.D.Cal.2000),................................................. 16

S.E.C. v. Cotton,
    No. SACV 06-0905, 2006 WL 6382128  (C.D. Cal. Dec. 21, 2006) ....................................... 10

S.E.C. v. Morris,
    No. Civ.A. H-04-3096, 2005 WL 2000665  (S.D.Tex. Aug. 18, 2005) .................................. 12

San Francisco Patrol Special Police Officers v. City and County of San Francisco,
    13 Fed. Appx. 670  (9th Cir. 2001)........................................................ 4

Sanders v. Kennedy,
    794 F.2d 478  (9th Cir.1986) ............................................................ 6

Schiavone v. Fortune,
    477 U.S. 21  (1986)................................................................ 36

Siracusano v. Matrixx Initiatives, Inc.,
    585 F.3d 1167  (9th Cir. 2009) ......................................................... 7

South Ferry LP #2 v. Killinger,
    542 F.3d 776 (9th Cir. 2008) .......................................................... 8

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
    551 U.S. 308 (2007)............................................................... 6,25

TSC Indus., Inc. v. Northway, Inc.,
    426 U.S. 438  (1976)............................................................... 15

Van Buskirk v. Cable News Network, Inc.,
    284 F.3d 977  (9th Cir. 2002) .......................................................... 3

Zucco Partners, LLC v. Digimarc Corp.,
    552 F.3d 981  (9th Cir. 2009) ........................................................ 7,28

**Statutes**

15 U.S.C. §78u-4(b)(4) ................................................................. 32

28 U.S.C. §1658(b)(1)(2)................................................................ 34

**Rules**

FED. R. CIV. P 15 .................................................................... 38, 39

FED. R. CIV. P. 12(d)................................................................... 4

FED. R. CIV. P. 15(c)(1) ............................................................... 35

FED. R. CIV. P. 15(c)(1)(B)……………………………………………………………..36

FED.R. CIV. P. 15(c)(1)(C)................................................................................... 35

FED.R. CIV. P. 12(b)............................................................................................ 40

FED.R. CIV. P. 12(b)(6)........................................................................................ 17

FED.R. CIV. P.  15(c)(B) ...................................................................................... 38

Lead Plaintiffs James O'Hern and John O'Hern, on behalf of themselves and all others similarly situated, respectfully submit this memorandum of law in opposition to the CBN Defendants'[1] motions to dismiss the Second Amended Consolidated Complaint (the "SAC" or the "Complaint") (Dkts. 147 & 148).[2]  For a detailed summary of the allegations of the Second Amended Complaint, Plaintiffs respectfully refer the Court to the Statement of Material Facts accompanying this opposition.

## PRELIMINARY STATEMENT

The new allegations of the SAC present a pervasive financial fraud at Atlas during the Class Period that was hiding in plain sight.  The stunning reality of the situation was that one-third of Atlas's entire business was literally a fiction that existed only on paper.  As the SAC reveals, Atlas had absolutely no capability to mine and process halloysite clay, yet for over three years, claimed that it had actually made sales of "processed halloysite" and had bright prospects of further sales.  As Plaintiffs allege with particularity, the fictitious halloysite business was created by Defendant William Jacobson, Atlas's former CEO, so that Jacobson could inflate the price of Atlas's stock and loot his Company by engaging in numerous improper stock issuances, related-party transactions and side deals without proper corporate authorization or purpose.

In the face of blatant securities violations and other wrongdoing, CBN – Atlas's long – standing auditor was not blameless and its role was not one of mere negligence, subtle judgment or inattention to detail.  Among other salient facts uncovered by Plaintiffs, CBN was far more

---

[1] "CBN Defendants" or "CBN" shall refer to Defendants CBN, Todd Chisholm and Troy Nilson. Specific references to Chisholm and Nilson will be noted where applicable.

[2] References to the SAC shall appear herein as "¶__."

PLAINTIFFS' OMNIBUS OPPOSITION TO THE MOTIONS TO DISMISS FILED BY THE CBN DEFENDANTS AND IN SUPPORT OF PLAINTIFFS' CROSS MOTION TO STRIKE - 1

than just Atlas's outside auditor.  In fact, CBN also served as the *preparer of Atlas's financial statements* in the year 2004, and thus was charged with reporting on specific aspects of Atlas's business in the year-end financials Atlas filed with the SEC.  Yet, even though it served in both of these roles in the crucial year where Atlas suspiciously timed a "sale" of halloysite clay to NaturalNano, CBN does not dispute that it did not review the contract or other documentation substantiating that transaction pleaded in the SAC.  These documents, referenced in detail, undisputedly establish that Atlas never had any basic processing capability for its clay and could not have any viable halloysite business.  No reasonable auditor (and certainly no reasonable auditor serving at the same time as the preparer of financial statements) could possibly have recognized the transaction with NaturalNano as a legitimate sale.

Further, given that Atlas lacked any processing capability for its clay, no reasonable auditor would have issued clean audit opinions on two subsequent years of the Company's annual SEC filings representing Atlas's clay operations as commercially viable.  Taking the SAC's new and detailed allegations concerning the combination of GAAP and GAAS violations, the nature of Atlas's fraud, the numerous "red flags" of wrongdoing and the Company's post-Class Period admissions, in totality, this Court can and should draw only one conclusion -- CBN's so-called "audits" were no audits at all.

Though CBN attempts to absolve itself from liability by introducing extraneous evidence by exhibit or otherwise, these attempts are wholly improper on this motion to dismiss and are based on distorted applications of the judicial notice doctrine.  As detailed herein, the Court should strike CBN Exhibits 7 and 8 from the record and not entertain CBN's invitation for the Court to consider an investigation of the Public Company Accounting Oversight Board that is totally unrelated to the parties and allegations in this case.  Lead Plaintiffs' securities claims

PLAINTIFFS' OMNIBUS OPPOSITION TO THE MOTIONS TO DISMISS FILED BY THE CBN DEFENDANTS AND IN SUPPORT OF PLAINTIFFS' CROSS MOTION TO STRIKE - 2

against the CBN Defendants should proceed and both motions to dismiss should be denied in

their entirety.

## ARGUMENT

## I.    CERTAIN EXTRANEOUS EVIDENCE OFFERED BY CBN SHOULD BE STRICKEN FROM THE RECORD

As a threshold matter, the Court should address the extraneous evidence CBN has

impermissibly submitted with its motion to dismiss.[3]  Plaintiffs take issue with the following

documents: (1) letters from Atlas that, according to CBN, were incorporated within the

agreements between CBN and Atlas (CBN Exhibit 7); (2) a "confirmation" document

purportedly found in CBN's work papers (CBN Exhibit 8); (3) a PCAOB[4] investigation report of

PMB Helin Donovan LLP ("PMB"), which the company hired to replace CBN as Atlas's auditor

in the aftermath of the fraud (*see* CBN Brief ("CBN Br.") at 20, n.4).  For various reasons, the

consideration of each of these documents is improper.

There is no doubt that "extraneous evidence should not be considered in ruling on a

motion to dismiss."  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir.

2001).  A court may typically only consider allegations contained in the complaint, documents

attached as exhibits to or incorporated by reference, and matters of which the Court has taken

judicial notice.  *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).  If,

on a motion to dismiss, the Court considers documents that do not fall within one of the

---

[3] Plaintiffs do not take issue with CBN's Exhibit 6, which is a copy of Atlas's July 15, 2009 10-Q/A containing the restated financials alleged in the SAC.  Nor do Plaintiffs take issue with CBN's Exhibit 9, which are the public versions of the PCAOB reports detailing the investigation of CBN. These documents are specifically referenced in the SAC and thus are implicitly incorporated by reference.

[4] PCAOB refers to the Public Company Accounting Oversight Board.

PLAINTIFFS' OMNIBUS OPPOSITION TO THE MOTIONS TO DISMISS FILED BY THE CBN DEFENDANTS AND IN SUPPORT OF PLAINTIFFS' CROSS MOTION TO STRIKE - 3

exceptions, the motion is converted to one for summary judgment, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the [Rule 56] motion." FED. R. CIV. P. 12(d).

According to CBN, the letters attached as Exhibit 7 were purportedly incorporated into the retainer agreements between Atlas and CBN referenced in the Complaint.  First, contrary to CBN's reliance on the "incorporation by reference" doctrine, the SAC makes no reference to these letters and Plaintiffs have no indication that these letters are part of any of the relevant retainer agreements.  As such, the letters are outside the scope of judicial notice and should not be considered. *San Francisco Patrol Special Police Officers v. City and County of San Francisco,* 13 Fed. Appx. 670, 675 (9th Cir. 2001) (for "incorporation by reference" doctrine to apply, material must be "necessarily relied upon by the plaintiff's complaint"); *Pearce v. Bank of Am. Home Loans*, No. C 09-3988 JF, 2010 WL 689798, at *3 (N.D. Cal. Feb. 23, 2010) (holding that document was outside the scope of the "incorporation by reference doctrine" as contents were not alleged in complaint).

Second, even if the Complaint did make reference to the letters, CBN ignores the principle that for a document to be properly considered under the "incorporation by reference doctrine," the parties must accept the document as authentic.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (incorporation by reference doctrine applies where "the parties do not dispute the authenticity of the document").  Here, the letters are certainly not self-authenticating and Plaintiffs dispute their authenticity.  Plaintiffs cannot verify the signatures purporting to be made on behalf of Atlas, and absent any discovery, cannot ascertain the circumstances under which the letters came into existence.  Third, as in any contractual dispute, the issue of whether or not the letters were actually incorporated into any agreement presents an issue of fact that

PLAINTIFFS' OMNIBUS OPPOSITION TO THE MOTIONS TO DISMISS FILED BY THE CBN DEFENDANTS AND IN SUPPORT OF PLAINTIFFS' CROSS MOTION TO STRIKE - 4

should be subject to discovery. *See e.g. Mackay v. Four Rivers Packing Co.*, 179 P.3d 1064, 1068 (Idaho 2008) (fact questions concerning terms of contract precluded summary judgment). For all of these reasons, the letters at Exhibit 7 are simply not properly considered.

Nor is it proper for the Court to consider the "confirmation" document (Exhibit 8) that was purportedly found in CBN's work papers. Like Exhibit 7, this document is not relied on or referenced in the Complaint and Plaintiffs dispute its authenticity. Furthermore, because CBN seeks to introduce this document to contradict the allegations of the Complaint that CBN did not review sufficient evidential matter with respect to the NaturalNano transaction, the request for judicial notice should be denied. *See In re Countrywide Fin. Corp. Secs. Litig.*, No. CV-07-05295-MRP (MANx), 2009 WL 943271, at *3 (C.D. Cal. April 6, 2009) (refusing to take judicial notice of a call transcript because it would contradict complaint's allegation of speaker). Lastly, the issue of whether or not this document was actually found in CBN's work papers and serves as evidence that CBN reviewed any details of the transaction- at best- raise issues of material fact that cannot be decided on this motion. *See e.g., Pearce*, 2010 WL 689798, at *3 (document purportedly evidencing a "written acknowledgment," was not proper subject of judicial notice, at best created only a "rebuttable presumption of delivery," which could be raised by defendant in subsequent dispositive motion).

The Court should similarly reject CBN's invitation, in a footnote, for the Court to consider the PCAOB's investigation of PMB because it is a "public document." While courts may sometimes consider matters of public record in connection with a motion to dismiss, the exception should be narrowly construed. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (exceptions are "not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment, and the defendants' perfunctory

PLAINTIFFS' OMNIBUS OPPOSITION TO THE MOTIONS TO DISMISS FILED BY THE CBN DEFENDANTS AND IN SUPPORT OF PLAINTIFFS' CROSS MOTION TO STRIKE - 5

arguments for the centrality of these documents are unpersuasive").  While the PCAOB report on

PMB may be considered to be a document in the public domain, PMB is not a party to this case,

the Complaint's allegations do not address PMB's conduct or competence as an auditor, PMB

had nothing to do with CBN's audits of Atlas, and PMB's performance of audits for its other

clients is wholly irrelevant to this action.  Plaintiffs have not found, nor to Defendants cite to,

any authority for the proposition that the contents of an irrelevant public document may be the

proper subject of judicial notice.  To the extent that any fact concerning an investigation of PMB

were deemed remotely relevant, it would certainly involve disputed issues and thus would not be

the proper subject of judicial notice simply because the investigation is contained in a public

record.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (district court may not

take judicial notice of a disputed fact in a public record).

As set for here, there is no basis to consider Exhibit 7, 8 or any document in connection

with the PCAOB investigation of PMB. The documents should be stricken from the record.

## II.     THE COMPLAINT ADEQUATELY PLEADS EXCHANGE ACT CLAIMS
AGAINST THE CBN DEFENDANTS

### A.     STANDARD OF REVIEW

As this Court recognized, in considering the instant motion, it must construe the

complaint in the light most favorable to plaintiff and take all material allegations as true.  *See*

9/25/09 Order Adopting Report and Recommendation [Docket No. 117] (the "9/25/09 Order") at

4; *see also In re Taleo Corp. Secs. Litig.*, No. C 09-00151 JSW, 2010 WL 597987, at *5 (N.D.

Cal. Feb. 17, 2010) (citing *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir.1986)).  It remains

the role of the jury, "to assess the credibility of witnesses, resolve any genuine issues of fact, and

make the ultimate determination whether [Defendant] ... acted with scienter." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 311 (2007).

### B.  THE LEGAL ELEMENTS OF SECURITIES FRAUD

To plead a claim under section 10(b) and Rule 10b-5, a plaintiff must allege: (1) a misrepresentation or omission, (2) of material fact, (3) made with scienter, (4) on which the plaintiff justifiably relied, (5) that proximately caused the alleged loss. *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1177 (9th Cir. 2009). The PSLRA requires that falsity and scienter both be pleaded with particularity. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009). In order to adequately plead scienter, "a complaint must 'allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness.'" *Zucco Partners*, 552 F.3d at 991 (*quoting In re Daou Sys., Inc.,* 411 F.3d 1006, 1014-15 (9th Cir.2005)).

In *Tellabs,* 551 U.S. 308, the court provided a three part test for the analysis of scienter on a motion to dismiss, holding that in determining whether a strong inference of scienter has been alleged, a court must: (1) "accept all factual allegations in the complaint as true"; (2) "consider the complaint in its entirety"; and (3) "take into account plausible opposing inference[s]." *Id.* at 322-23. The Court cautioned, however, that "[t]he inference that the defendant acted with scienter need not be irrefutable . . . or even the 'most plausible of competing inferences.'" *Id.* at 324 (citing *Fidel v. Farley,* 392 F.3d 220, 227 (6th Cir. 2004). It must merely be "*at least as likely* as any plausible opposing inference," *id.* at 328 (emphasis in original), and a tie is sufficient to avoid dismissal. *See Lormand v. US Unwired*, 565 F.3d 228, 254 (5th Cir. 2009). Furthermore, as the Ninth Circuit has held in interpreting *Tellabs*, a "practical and common-sense perspective" should be employed where "the federal courts

PLAINTIFFS' OMNIBUS OPPOSITION TO THE MOTIONS TO DISMISS FILED BY THE CBN DEFENDANTS AND IN SUPPORT OF PLAINTIFFS' CROSS MOTION TO STRIKE - 7

certainly need not close their eyes to circumstances that are probative of scienter" when looking

holistically at the allegations of the complaint. *South Ferry LP #2 v. Killinger,* 542 F.3d 776,

784 (9th Cir. 2008).

### 1. Plaintiffs Have Sufficiently Alleged that Atlas's Financial Statements Were Materially False and Misleading and in Violation of GAAP

In its Order, the Court found that: (1) Plaintiffs did not adequately plead a violation of

GAAP due to Atlas's varying treatments and classifications of the $250,000 received from

NaturalNano; and (2) the CAC insufficiently pled materiality. *See* 9/25/09 Order at 6-7.

With respect to GAAP, the SAC alleges new, particularized facts that address the Court's

concerns. The SAC specifically pleads two types of GAAP violations by Atlas: (1) it materially

overstated its revenues due to the halloysite sale that never actually took place; and (2) the

Company failed to adequately disclose the true nature of its operations, rendering it impossible to

make such a sale. ¶¶153-160.

### a.    Material Overstatement of Revenues

It is a fundamental accounting principle that revenue is not recognized until it is earned.

GAAP speaks in detail directly to this, and there can be no doubt that Atlas did not earn the

income it claimed as revenue. As the SAC pleads, GAAP is clear that in order to report income

as revenue, it must be earned. Earning revenue entails "*delivering or producing goods*" and

revenues are considered earned "when the entity has *substantially accomplished* what it must do

to be entitled to the benefits represented by the revenues. . . . " ¶ 155. (Emphasis added).

According to the Securities and Exchange Commission, for revenue to be realized as earned, *all*

of the following criteria must be met: (a) there must be persuasive evidence of an arrangement;

(b) *delivery must have occurred* (or services must have been rendered); (c) the seller's price to

the buyer is fixed or determinable; and (d) collectability is reasonably assured.  ¶156. These accounting principles are not subject to debate.

The SAC's allegations reveal a collusive agreement by Atlas and NaturalNano, whereby NaturalNano would enable Atlas to fraudulently claim the 2004 sale of halloysite, in exchange for a grant by Atlas of lucrative warrants to NaturalNano (valued at over double the amount received from NaturalNano for the clay "sale") and an *illusory promise to construct a processing facility for Atlas's halloysite*.  ¶72-86.  The fact that contract and purchase orders supporting the NaturalNano transaction, all set forth in detail in the SAC, confirm that Atlas did not have any processing capability whatsoever to make the clay a sellable commodity demonstrates the obviousness of the violation.  Under GAAP, *any* accounting treatment Atlas could have employed that recognized *earned revenue* from this bogus sale transaction would be improper and render the financial statements materially false and misleading.

Other than the improperly introduced "confirmation" document, which is the subject of Lead Plaintiffs' motion to strike (CBN Exh. 8), CBN does not dispute that it did not review the relevant contract or substantiating purchase orders detailed in the Complaint concerning the NaturalNano transaction at the time it performed its so-called audits of Atlas.  As Plaintiffs learned through cooperation with Atlas in connection with the settlement with the Company and related parties, none of these documents were contained within CBN's work papers.  ¶224. Despite its utter failure to obtain this documentation, CBN makes the inherently factual argument that the documents show that "a sound argument could be made that the revenue could have been recognized in the year 2004."  CBN Br. at 8.  This argument is a red herring for two reasons.

First, CBN's naked contention that the accounting was proper in 2004 involves a disputed issue of fact.  CBN's discussion about the specific application of GAAP, the appropriate methods

PLAINTIFFS' OMNIBUS OPPOSITION TO THE MOTIONS TO DISMISS FILED BY THE CBN DEFENDANTS AND IN SUPPORT OF PLAINTIFFS' CROSS MOTION TO STRIKE - 9

that are to be used, and whether the manner in which the Company applied GAAP was proper are not the proper subject of a motion to dismiss, where the factual allegations of the SAC are to be accepted as true.[5]  This argument should thus be rejected outright.  *See Provenz v. Miller,* 102 F.3d 1478, 1490 (9th Cir. 1996) (reversing grant of summary judgment because the "district court was wrong in resolving the factual disputes which exist as to the underlying transactions," particularly their accordance with GAAP); *S.E.C. v. Cotton*, No. SACV 06-0905, 2006 WL 6382128, at *6 (C.D. Cal. Dec. 21, 2006) ("[b]ecause the Court is required to accept plaintiff's allegations as true, the Court may not make such a contrary [GAAP] determination at this pleading stage and will not grant the motion to dismiss on this ground.");  *In re Genentech, Inc. Sec. Litig.*, No. C-88-4038-DLJ, 1990 WL 32070, at *3 (N.D. Cal. Jan. 19, 1990) (whether accounting method used conformed with GAAP was question of fact not appropriate to be considered on a motion to dismiss). [6]

---

[5] CBN's assertion that the accounting was proper because "Atlas had no obligation to deliver or process" (CBN Br. at 8) the halloysite is incredible.  At no time did Atlas ever disclose to its shareholders that it could not deliver or process halloysite, but instead claimed actual sales of the clay that could not possibly have occurred. Atlas's statements that it had actually sold "processed halloysite" were clearly false and misleading.

[6] *See also Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 257 (5th Cir. 2005) (Whether defendants used accounting method for revenue recognition in proper manner was "fact-based and ... insufficient to support a motion to dismiss."); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1421 (3d Cir. 1997) (whether a company's accounting practices were consistent with GAAP is a factual question best resolved by expert testimony and should not be addressed on a motion to dismiss); *In re Ambac Fin. Group, Inc. Secs. Litig.*, No. 08 Civ. 411(NRB), 2010 WL 727227, at *25 (S.D.N.Y. Feb. 22, 2010) ("[t]he parties' disagreements over GAAP compliance also raise issues of fact that cannot be resolved on a motion to dismiss"); *In re Majesco Secs. Litig.*, No. CIV A 05CV-3557 PGS, 2006 WL 2846281, at *5 (D.N.J. Sept. 29, 2006) (because GAAP compliance was a question of fact, "the accountants' arguments as to the accounting practices employed are not ripe for adjudication at this early pleading stage"); *S.E.C. v. Morris*, No. Civ.A. H-04-3096, 2005 WL 2000665, at *13 (S.D.Tex. Aug. 18, 2005) ("[n]either compliance with GAAP nor the materiality of omitted disclosures can be resolved on a motion to

Second, CBN cannot legitimately refute that Atlas had no capacity to mine, process or sell the clay in 2004, or any time thereafter.  Thus, CBN must concede on this fact alone that it was impermissible to recognize revenue from the NaturalNano transaction because no sale could possibly have occurred in 2004.  Atlas admitted as much in its disclosures about its intent to restate the Class Period financial statements.  As pleaded in the SAC, although the $250,000 was ultimately recognized on Atlas's financial statements in 2006 as "settlement of a contract," the money could *not be recognized as earned revenue from the sale of clay*.  ¶145.  Indeed, the sale could never be recognized as such, by any accountant or accounting principle, because no halloysite was sold in 2006 -- or ever -- by Atlas.  And certainly, the "settlement of a contract" in 2006 did nothing to address the accounting violation in recognizing any revenue whatsoever for 2004 and 2005, and did nothing to address the materially false statement that the money was revenue from the sale of clay.  In short, there was nothing right about the manner in which the NaturalNano transaction was booked.

Further evidence that the accounting for the fictitious sale was fraudulent may be found in the Company's restatements.  CBN Exhibit 6.  There, Atlas has confirmed that it cannot recognize any sale of clay unless the specific GAAP provisions pled in the SAC are met, specifically: "[r]evenue for mined halloysite clay, if any, will be recognized upon *shipment* and *customer acceptance* once a contract with a fixed and determinable fee has been established and *collection is reasonably assured* or the resulting receivable is deemed probable." (emphasis

---

dismiss"); *In re Digi Int'l, Inc. Sec. Litig.*, 6 F. Supp. 2d 1089, 1098 (D. Minn. 1998) (question as to whether accounting method was properly applied not appropriately resolved on a motion to dismiss).  This is especially true in this case where the complaint's allegations are supported by Atlas's eventual admissions that the accounting treatment was incorrect until at least the year 2006.

added).  Contrary to CBN's contention, therefore, there could be no "ambiguity" in the treatment of the 2004 halloysite sale transaction.

### b.      Nature of Atlas's Halloysite Operations

With respect to the second GAAP violation – Atlas's repeated misrepresentations concerning the nature of its halloysite operations -- all Defendants, including CBN, knew that the accounting for the halloysite transaction was a key factor that enabled the Company to tout its future prospects for the sale of halloysite.  Indeed, CBN was particularly on notice of this core element of Atlas because it served as *both* Atlas's auditor *and the preparer of its financial statements* for four years and as Atlas's auditor for three additional years after that.  ¶¶169, 170. Once the revenue was recognized from the fictitious sale of clay, Atlas continued to publicly report prospects of future sales.  ¶¶ 87-115.  These statements included various public statements, press releases and annual and quarterly SEC filings.  All the while, Atlas never disclosed that it utterly lacked any processing capability for the clay.  Accordingly, the second, critical GAAP violation pled in the SAC affects each SEC filing during the Class Period certified by CBN because of the failure of Atlas to disclose that its halloysite operations were not viable. ¶¶ 158-160.  Plaintiffs' allegations sufficiently to establish actionable false and misleading statements under the securities laws.

CBN posits that Atlas never created the impression of a viable halloysite business, that the company was failing and that the statements alleged in the SAC are an "exaggeration" of Atlas's SEC filings.  CBN Br. at 14.  We disagree.  This argument, like CBN's argument concerning the accounting for the NaturalNano transaction, impermissibly takes factual issue with the Complaint and is not proper on this motion.  The SAC's allegations, which the Court

must accept as true, specify how Atlas created the false impression that it had sold "processed halloysite clay," that it had bright prospects of selling more clay, all the while never disclosing that it utterly lacked any processing capability whatsoever to enable it to sell the clay. *To date, Atlas represents that it cannot provide any assurances as to whether a commercially viable deposit of halloysite exists in its possession.* ¶53. As alleged by the SAC, after the fraud was revealed, the Company even specifically reported through its Special Committee that public statements made by Atlas concerning the "halloysite production capabilities and activities" were false and misleading. ¶136.

Furthermore, CBN's arguments that Atlas was failing overall or that Atlas included qualifying statements in its SEC filings regarding its inability to formalize "future sale[s]" of clay does not defeat the falsity of the statements alleged in the Complaint concerning the commercial viability of its halloysite business.[7] CBN's argument, taken to its conclusion, would stand for the wild proposition that defendants could be shielded from making materially false statements under the securities laws if the subject company was failing.

In addition, CBN's argument is in essence the "truth on the market defense" where defendants typically claim that adverse information is known to the market because the information has been disclosed by a company or other sources. The "truth on the market

---

[7] Similarly unavailing is CBN's argument concerning Atlas's statements that future "sale[s] of product cannot be formalized until we have verified our ability to provide the quality and quantities as required by the potential buyers." *See* CBN Br. at 14. Such statements cannot immunize material misrepresentations and omissions that Atlas *had already* processed and sold halloysite to NaturalNano. Here, from Atlas's statements, the logical conclusion is that the NaturalNano halloysite sale had been formalized because it had been claimed as a sale. Atlas's statements concerning how sales are formalized, therefore, actually confirm that Atlas intentionally created the illusion of a viable halloysite business (Atlas should not have made any statements concerning future sales because it could not process any clay to make any sales at all).

PLAINTIFFS' OMNIBUS OPPOSITION TO THE MOTIONS TO DISMISS FILED BY THE CBN DEFENDANTS AND IN SUPPORT OF PLAINTIFFS' CROSS MOTION TO STRIKE - 13

defense," however is "intensely fact-specific, so courts rarely dismiss a complaint on this basis." *In re Amgen Inc. Secs. Litig.*, 544 F.Supp.2d 1009, 1025 (C.D. Cal. 2008). In addition, to succeed, CBN would have to sustain the heavy burden of proof to show that the information alleged to be withheld (the lack of processing capability at Atlas enabling the company to sell commercially viable clay) "was transmitted to the public with a degree of intensity and credibility sufficient to effectively counterbalance any misleading impression created." *In re Immune Response Secs. Litig.*, 375 F.Supp.2d 983, 1036 (S.D. Cal. 2005) (*quoting Provenz v. Miller*, 102 F.3d 1478, 1492-93 (9th Cir. 1996)). CBN has not made - and cannot make - such a showing here as Atlas never disclosed its lack of processing capability for the clay or the lack of viability of its halloysite business until the Company made its first disclosures of the fraud in October 2007.

### c.    Materiality

The SAC includes details of Defendants' scheme to misrepresent the fundamental nature and viability of Atlas's halloysite business. Viewing the allegations holistically, while the amount of revenue involved in the accounting for the fictitious halloysite sale was $250,000, this amount contributed to 24% of Atlas's revenues for the year, a sixteen fold increase in Atlas's gross profit and *a staggering 239% increase in total revenue over the same period in the prior year*. ¶71. More importantly, the recognition of this revenue allowed Atlas to fabricate a viable business that did not have basic processing capability. Plaintiffs have made the requisite showing of materiality that "'a reasonable shareholder would consider the misrepresentation or omission important, because it altered the total mix of available information'" available to shareholders. *Provenz*, 102 F.3d at 1489; *see also* ¶¶161-164 (materiality may be demonstrated by filing of restatements; accounting pronouncements provide that retroactive restatement of

PLAINTIFFS' OMNIBUS OPPOSITION TO THE MOTIONS TO DISMISS FILED BY THE CBN DEFENDANTS AND IN SUPPORT OF PLAINTIFFS' CROSS MOTION TO STRIKE - 14

financial statements is reserved for *material* accounting errors that existed at the time the financial statements were prepared).

CBN's view that Atlas's statements are immaterial as a matter of law runs afoul of Supreme Court precedent.  In *Northway,* the Court ruled that issues relating to materiality present mixed questions of law and fact best resolved by the trier of fact and are rarely even decided on summary judgment:

> The determination [of materiality] requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact.  Only if the established omissions are "so obviously important to an investor, that reasonable minds cannot differ on the question of materiality" is the ultimate issue of materiality appropriately resolved "as a matter of law" by summary judgment.

*TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 450 (1976) (*quoting Johns Hopkins University v. Hutton*, 422 F.2d 1124, 1129 (4th Cir. 1970)); *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund,* No. 07-5125-cv, 2010 WL 520896, at *3 (2d Cir. Feb. 16, 2010) (complaint may not be dismissed under Rule 12(b)(6) on materiality grounds "unless so obviously unimportant to reasonable investor that reasonable minds" cannot differ on question of importance).

Irrespective of this, CBN's arguments that Atlas properly disclosed everything to the public all along is belied by the very fact that when the Company made its disclosures on October 8, 2007 that it had no viable halloysite business, the Company's stock price literally *plummeted 51% almost overnight.  See e.g., No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d 920, 935 (9th Cir.2003) (finding plaintiffs had sufficiently pled materiality based on 31% decline in stock price when true facts were disclosed to the market); *In re Cooper Secs. Litig.,* No. SACV06-00169-CJC(RNBx), 2010 WL

PLAINTIFFS' OMNIBUS OPPOSITION TO THE MOTIONS TO DISMISS FILED BY THE CBN DEFENDANTS AND IN SUPPORT OF PLAINTIFFS' CROSS MOTION TO STRIKE - 15

768936, at *6 (C.D. Cal. March 4, 2010) (recognizing importance of movement in stock price to issue of materiality); *Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir. 2000) (materiality can be determined "by looking to the movement, in the period following…disclosure").  Taking all of its allegations together as a whole, the SAC, demonstrates that Defendants' statements during the Class Period, as set forth with particularity in the SAC, were materially false and misleading when made.

2.   **The Fraud At Atlas Was So Egregious That CBN Cannot Avoid A Finding of Scienter By Claiming Ignorance**

a.   **Caselaw concerning Scienter premised on Auditor Recklessness**

The showing necessary to state a prima facie case against an auditor is no more stringent than for any other § 10(b) defendant.  As was explained by the court in *Countrywide,* relied upon by this Court in its September 25, 2009 Order:

> Some courts have given outside auditors as a class remarkable deference, in part because some courts think outside auditors lack "any rational economic incentive to participate in its client's fraud."  *Reiger v. PricewaterhouseCoopers*, LLP, 117 F.Supp.2d 1003 (S.D.Cal.2000), *aff'd sub. nom. DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385 (9th Cir.2002).  The Court finds this supposition suspect, at best.  Auditors are hired and retained by insiders.  A few top auditing firms compete for high-profile clients such as Countrywide.  Therefore, they have strong structural incentives to yield to management on close questions.  More to the point, *Tellabs* and *South Ferry* put to rest the misguided idea that courts should create categorical rules and presumptions for different kinds of actors and statements.

588 F. Supp. 2d 1132, 1197 n. 79 (C.D. Cal. 2008) (internal citations omitted).[8]  Thus, there is no basis for any talismanic status excusing auditors from the same securities laws that apply to other actors.

---

[8] In issuing its September 25, 2009 ruling, the Court applied the legal standards set forth in DSAM and the 2008 opinion in *Countrywide*.  The Court should note the subsequent holding on April 6, 2009 in *Countrywide*, 2009 WL 943271, at *3, decided after the plaintiffs were given the opportunity to amend, which sustained Plaintiffs' 10-b claims against the auditor.

As this Court has already observed, a *prima facie* case against an auditor or other public accountant under § 10(b) is established by showing that the auditor certified materially false financial statements either intentionally or with deliberate recklessness.  9/25/09 Order at 8. In addition, as recognized in *Countrywide*, "[t]he 'red flag' doctrine guides the GAAP and GAAS inquiries: the more facts alleged that should have caused a reasonable auditor to investigate further before making a representation, the more cogent and compelling a scienter inference becomes."  588 F.Supp.2d at 1197 (*citing DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 389 (9th Cir. 2002)).

For purposes here, the Third Circuit's ruling *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 280-81 (3d Cir. 2006) is especially illustrative on the facts.  There, the Third Circuit vacated the district court's dismissal of plaintiffs' securities claims against its auditor for failure to plead scienter.  In *Suprema Specialties*, like Atlas here, defendant Suprema Specialties, Inc. ("Suprema"), had represented itself as a producer and distributor of cheeses and fabricated cheese sales to report growth to shareholders.  438 F.3d at 263.  In reality, Suprema's public statements regarding its finances and the nature of its business were untrue.  Suprema had engaged in a "round-trip sales scheme" where Suprema purportedly sold fictitious cheese products to entities posing as customers (like the fictitious halloysite Atlas sold to NaturalNano here), who then sold to entities posing as suppliers, who in turn, sold the products back to Suprema.  *Id*. at 265.  On paper, this scheme portrayed Suprema's phenomenal growth, until the fraud was ultimately revealed.  *Id*.

The district court rejected plaintiffs' allegations of GAAS violations and red flags, concluding that the red flags were normal aspects of the business, further finding that the auditor had fulfilled its obligations and that it too was a victim of the company's fraud.  438 F.3d at 279.

PLAINTIFFS' OMNIBUS OPPOSITION TO THE MOTIONS TO DISMISS FILED BY THE CBN DEFENDANTS AND IN SUPPORT OF PLAINTIFFS' CROSS MOTION TO STRIKE - 17

In vacating the district court's ruling, the Third Circuit held that the complaint's allegations, accepted as true, revealed that "the evidence of Suprema's financial foul play was hiding in plain sight." *Id*. at 280. The court found persuasive the allegations (similar to those here) demonstrating that Suprema's management was dominated by a small group of individuals, that "the company had only five 'customers' that accounted for more than 80% of its business in 2001," and that a simple investigation by the auditor including an investigation of relevant checks would have revealed inconsistencies. *Id.* at 280-281. The Third Circuit also found that "plaintiffs have offered a detailed set of allegations as to how [the auditor] violated specific GAAS standards in its audit of Suprema, and they have identified numerous substantive indicators of fraud that were allegedly ignored altogether in the auditing process." *Id.* at 281.[9] This is exactly what Plaintiffs plead in the SAC in this case.

### b.    CBN Acted with Scienter

The SAC's extreme detail remedies the Court's prior concern that the prior operative complaint had not adequately pled scienter. Specifically, the following categories of facts

---

[9] *See also In re Cendant Corp. Litig.*, 60 F. Supp. 2d 354, 372-73(D.N.J. 1999) (plaintiff alleged "recklessness if not conscious misbehavior" by the auditor based on, inter alia: failure to discover the massive fraud; failure to comply with GAAS; disclosure to investors of unqualified audit reports that were false; and a failure to obtain sufficient evidential matter to form a basis for an unqualified audit opinion instead of simply relying on management's representations); *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2003 WL 21488087 at *7 (S.D.N.Y. June 25, 2003) ("[t]he allegations identifying the steps Andersen should have taken and failed to take, and the fraud it would have discovered if it had taken those steps, create a strong inference that Andersen acted recklessly in conducting the WorldCom audits."); *In re First Merchants Acceptance Corp. Sec. Litig.*, No. 97 CV 2715, 1998 WL 781118 at *11 (N.D. Ill. Nov. 2, 1998) ("the magnitude of the misstatements, the specific GAAP and GAAS violations and the 'red flags' together support an inference that Deloitte's audit, amounted to no audit at all or an egregious refusal to see the obvious or investigate the doubtful,") (quotations omitted); *In re Lernout & Hauspie Sec. Litig.*, 230 F. Supp. 2d 152, 168 (D. Mass 2002) ("[the] panoply of 'red flags,' taken together, is more than sufficient to strongly support an inference that KPMG U.S. acted with recklessness or actual knowledge....").

pleaded in the SAC and discussed in detail below are probative of and support an inference of scienter: (1) the allegations concerning the nature of CBN's "high volume" business model and practice (¶¶36, 176-178); (2) the relationship between Atlas and CBN and intimate knowledge CBN had with Atlas's business, where CBN for a time and in the crucial year 2004 served as both auditor and preparer of financial statements (¶¶169-172); (3) significant GAAS violations "red flags," "risk factors" and indicators of fraud to which CBN did not react or respond (¶205-281); (4) the Special Committee's findings, Company's restatements and post Class Period admissions, and formal SEC investigation of Atlas (¶¶ 86, 132-145); (5) the PCAOB investigation of CBN (¶¶282-285).  Though CBN tries its hardest to pick apart certain allegations and scrutinize each in isolation, this approach violates the mandate of *Tellabs* and the Ninth Circuit's standard articulated in *South Ferry*.  In fact, all of these allegations, viewed holistically with a common sense perspective, as they must on this motion, support an inference of scienter.

       **i.**       **New Allegations Concerning CBN's Business Model And CBN's Relationship With Atlas**

CBN does not dispute that it conducted a high volume accounting practice, motivated to get the most audits done for the largest amount of clients in the shortest time possible.  At all relevant times, CBN had a professional staff of only between six and  twelve professionals, but performed SEC work for over *sixty seven (67)* public companies, a volume that is absolutely unheard of in the industry.  ¶¶36, 176.  Notwithstanding, CBN represented on its Web site that its audits provided "the *highest level* of assurance to third parties, and include[d] [an] *in-depth examination* and confirmation of account balances, inventories, and selected transactions." (Emphasis added).  ¶174.  CBN could not deliver any such level of assurance given its high

volume business model, and CBN knew that it was impossible for it to pay sufficient attention to perform the "in-depth examination" it promised.

In addition, as the SAC alleges, after CBN began working for Atlas in 2000, it served as the auditor, *but at the same time, prepared Atlas's financial statements*.  Serving in dual roles from 2000 through 2004, CBN, as auditor, had to evaluate the quality and adequacy of its own work.  ¶¶169, 170.  CBN undertook this dual role because it knew that Atlas did not have an accounting department and the person in charge of keeping Atlas's books had absolutely no accounting training or any relevant training in the preparation of financial statements.  ¶172. Because CBN served in both roles as auditor and as preparer of financial statements, its function far surpassed that of a mere outside auditor in 2004, the year in which Atlas recognized the fictitious clay sale to NaturalNano.  Since CBN was being called upon to prepare the financial statements concerning the Company's three main lines of business, CBN either knew or recklessly disregarded that one of the Company's business lines was a total sham.

CBN's understanding of Atlas's business is underscored by the terms of the retainer agreements with Atlas, which called upon CBN's expertise to:  (a) *conduct its audits in accordance with GAAS* and standards established by PCAOB; (b) *obtain reasonable assurance that the Company's financial statements were free of, among other things, material misstatements, misappropriation of assets and violations of law* by the Company and its employees; (c) *test documentary evidence* supporting the transactions recorded in the accounts; and (d) *communicate errors, fraud or illegal acts* to the audit committee and management of the Company.  ¶171.  CBN failed in all respects.

## ii.    Reckless disregard for accounting/ GAAP violations

As set forth herein, the SAC pleads that Atlas committed two significant GAAP

violations:  (1) Atlas violated GAAP by, *inter alia*, recognizing a quarter of a million dollars that was not "earned" from an actual sale of halloysite; and (2) in every relevant SEC filing, Atlas failed to disclose that its halloysite business was a myth because it had no processing capability for its clay.  When combined with other circumstances suggesting fraudulent intent, allegations of improper accounting or violations of GAAP may support a strong inference of scienter.  In finding that plaintiffs had sufficiently alleged the requisite level of detail supporting an inference of scienter based on GAAP violations, the court in *McKesson* stated:

> [w]hen significant GAAP violations are described with particularity in the complaint, they may provide powerful indirect evidence of scienter.  After all, books do not cook themselves.  In *Greebel*, the First Circuit provided a non-exclusive list of particular allegations that plaintiffs should provide when alleging irregularities in revenue recognition: (1) "such basic details as the approximate amount by which revenues and earnings were overstated"; (2) "the products involved in the contingent transactions"; (3) "the dates of any of the transactions"; or (4) "the identities of any of the customers or [company] employees involved in the transactions."  194 F.3d at 204.  Equipped with such information, a court can discern whether the alleged GAAP violations were minor or technical in nature, or whether they constituted widespread and significant inflation of revenue.  When there are substantial allegations that the violations were of the latter variety, a strong inference arises that senior management intentionally misstated earnings.

*In re McKesson HBOC, Inc. Secs. Litig.,* 126 F.Supp.2d 1248, 1273 (N.D. Cal. 2000).[10]

Here, as set forth herein, Plaintiffs have detailed the GAAP violations with corroborating contemporaneous facts.  In light of the basic nature and great significance of these violations, together with the other allegations of the SAC, a strong inference of scienter as to CBN is established.  Indeed, there are few more basic GAAP principles than those relating to revenue recognition, which fundamentally provide that unearned revenue, the only revenue recognized by

---

[10] *See also, Burritt v. NutraCea,* No. CV-09-00406-PHX-FJM 2010 WL 668806, at *6 (D. Ariz., Feb. 25, 2010)(detailed allegations of GAAP violations support inference of scienter); *In re MicroStrategy, Inc. Securities Litig.*, 115 F.Supp.2d 620, 637-38 (E.D. Va. 2000) (denying auditor's motion to dismiss, stating "violations of simple rules are obvious, and an inference of scienter becomes more probable as the violations become more obvious").

Atlas stemming from halloysite sales, cannot be legitimately recognized.  *See* ¶155-156.

Moreover,  as set forth above, the requirement that a company disclose the core nature of its

business is a fundamental concept that does not involve the application of complex numerical

formulas; and thus, cannot be subject to varying interpretations.  ¶158-160.  As is further detailed

herein, CBN was required to ensure under GAAS that "*the overall impression created by the*

*financial statements be consistent with the business realities of the company's financial position*

*and operations.*"  ¶201.  Notwithstanding the obviousness and clarity of the aforementioned

GAAP provisions, however, CBN acted recklessly in certifying Atlas's offending financial

statements, lending further support that CBN acted with scienter.

### iii.     GAAS violations, red flags and the overwhelming fraud risk at Atlas

CBN ignores the SAC's highly detailed allegations demonstrating how CBN violated

GAAS in conducting its audits of Atlas, and those allegations further contribute to an inference

of scienter.  Each GAAS violation is sufficiently detailed with reference to the specific standard

involved and corroborating facts.  Specifically, it is alleged that: (1) CBN failed to exercise due

professional care in the performance of its audits (¶¶ 208-220); (2) CBN failed to adequately

plan its audits and assess the true nature of Atlas's business and prospects for the sale of

halloysite (¶¶221-234); (3) in the face of numerous glaring red flags, CBN violated GAAS by

failing to obtain reasonable assurance that the financial statements were free from material

misstatement caused by fraud (¶¶235- 272); (4) CBN violated GAAS by failing to obtain

sufficient competent evidential matter corroborating the NaturalNano transaction and Atlas's

statements concerning its halloysite business (¶¶273-277);[11] and (5) CBN violated GAAS by

_____

[11] Citing paragraphs 187 and 224, CBN argues that Plaintiffs concede that "Atlas failed to give
CBN the contractual documents to the NaturalNano transaction."  Plaintiffs did not make any
PLAINTIFFS' OMNIBUS OPPOSITION TO THE MOTIONS TO DISMISS FILED BY THE
CBN DEFENDANTS AND IN SUPPORT OF PLAINTIFFS' CROSS MOTION TO
STRIKE - 22

failing to take into account Atlas's weak internal controls (¶¶278-281).  Furthermore, as pleaded in the SAC, an overarching principle in performing any audit is the requirement that the auditor take a step back from particular accounting issues to ensure that "*the overall impression created by the financial statements be consistent with the business realities of the company's financial position and operations*.  ¶201 (*citing* SEC's Accounting Series Release 173)(emphasis added).  As set forth in the SAC, CBN failed to adhere to the basic tenets set forth in GAAS and hence, performed audits which were so deficient that they amounted to no audit at all.

GAAS specifically counsels auditors to be on the lookout for certain risk factors or red flags indicative of possible fraud.  *See* ¶¶235-272.  Here, CBN recklessly misrepresented that it complied with GAAS upon certifying Atlas's inflated financial statements in Atlas's 2004 10-K and subsequent SEC annual filings when it disregarded numerous red flags.  Those red flags, which include red flags pled in the CAC, together with new red flags pled in the SAC are: (a) prior to Atlas's alleged sale of halloysite in 2004, Atlas had *never sold any significant quantity of halloysite clay to anyone*; (b) the recognition of revenues from the 2004 halloysite sale dramatically contributed to *24% of Atlas's total revenues*, a *sixteen fold increase in Atlas's gross profit* and a *staggering 239% increase in total revenues* in comparison to the same period in the prior year; (c) the 2004 halloysite sale to NaturalNano was suspiciously timed at year-end, at which time auditors know that companies are under pressure to present positive financial results

---

such concession and are at a loss to understand this statement.  In no way do Plaintiffs "concede" that Atlas withheld information from CBN.  Plaintiffs allege that the information was available and that CBN was required under GAAS to obtain it.  (If Atlas had, as CBN claims, withheld the information, CBN should not have issued clean audit opinions to Atlas).  Further, as pled in the SAC, if CBN had relied on Atlas's representations alone rather than gathering sufficient evidence to convince itself of the propriety of sale transaction, this would constitute an independent violation of GAAP. ¶273.

to their shareholders; (d) along with the halloysite "sale" Atlas inexplicably issued very lucrative warrants to NaturalNano for no disclosed business purpose and never disclosed any agreement by NaturalNano to construct a processing facility for Atlas; (e) the contract with NaturalNano called for the sale of "processed" halloysite, yet because Atlas had no ability to sell processed clay, the recognition of revenue from this sale was presumptively improper on its face; (f) there were significant discrepancies in Atlas's accounting records and documentation substantiating the NaturalNano transaction alleged, and as learned through cooperation with Atlas, this documentation was not found in CBN's workpapers; (g)  following the fictitious 2004 sale, Atlas made no further sales of halloysite clay, yet CBN continued to issue clean audit opinions for two subsequent years without taking any steps to mitigate its wrongdoing; (h) halloysite clay operations purported to be one-third of Atlas's business and a veritable pot of gold ensuring future prosperity to the Company; (i) Atlas's CEO was looting his company at the time by making stock issuances and engaged in numerous related party transactions in violation of the federal securities laws and in issuing improper company loans to related parties; and (j)  Atlas had no accounting department and the person in charge of keeping the books and records was not experienced enough to perform these tasks.  ¶237.  Atlas's side-stepping of these red flags doesn't make them go away.  A few would suffice to establish scienter; here, there are numerous.

The SAC now contains new allegations with respect to the recklessness of CBN's conduct in not acting in the face of the widespread fraud perpetrated by Atlas at the hands of William Jacobson.  With reference to this fraud, Plaintiffs have alleged numerous detailed facts to show that the magnitude of Jacobson's fraud and overwhelming fraud risk should have enhanced CBN's suspiciousness of Atlas's financial statements.  *See* ¶¶244-251 (unauthorized S-8 stock issuances of 15.1 million shares providing windfall to Jacobson's friends, family and

entities controlled by Jacobson); ¶¶ 252-255(Jacobson's "parking" of 9.9 million SB-2 shares with friends, family and related entities, Atlas's receipt of less than fair value for the shares and improper registration of SB-2 shares as a receivable) ¶¶257- 262 (related party transactions including S-8 stock issuances to entities controlled by Jacobson and Jacobson's wife; Rule 144 share issuances to Jacobson's son; loans to companies owned and/or controlled by Jacobson). Obviously, CBN was auditing within a cesspool of Jacobson malfeasance.  CBN was –no doubt- asleep at the switch.

There is more.  Had CBN not recklessly performed its audits of Atlas, it would have recognized the overwhelming fraud risk at the Company.  For example, as alleged in the SAC with respect to Jacobson's unauthorized S-8 stock issuances, *CBN was charged with testing the fair value of Atlas securities and to evaluate whether the disclosures related to these transactions were adequate*.  ¶245. With respect to Jacobson's "parking" of shares, Atlas's receipt of less than fair value and recording of SB-2 stock as a receivable, CBN's duty as Atlas's auditor was to investigate the sources of Atlas's receivables and to give an opinion on collectibility.  ¶256.  Had CBN properly investigated Atlas's receivables in accordance with GAAP, GAAS and PCAOB standards, it would have learned of this wrongdoing and the fraud risk at Atlas.  *Id*.  With respect to Jacobson's related party transactions, as Atlas's auditor, CBN had a duty and responsibility under GAAP, GAAS, and PCAOB standards to note these transactions and inform Atlas of its compliance responsibilities under the securities laws.  The total lack of any documentation ("Section 16 Filings") for these related party transactions should have alerted CBN to the fraud risk at Atlas.  ¶¶263-264.

CBN's only response to these incredible allegations is that they are "motive and opportunity" allegations that cannot support an inference of scienter.  CBN is wrong.  Far from

being allegations of mere "motive and opportunity,"[12] these allegations confirm actual, ongoing

fraud at Atlas and the concerted scheme by William Jacobson to loot the Company.  In fact, as in

the *Suprema Specialties* case discussed in detail *supra*, the numerous related-party transactions

and share transfers to family members are high flying red flags of fraud that CBN should have

discovered and should have made an effort to probe further.[13]  As Atlas's auditor during the

entire Class Period and the preparer of its financial statements in the crucial year 2004, it is

inconceivable that CBN did not know that Jacobson was looting the Company.  At a minimum,

turning a blind eye to the obvious supports the allegations that CBN acted recklessly.

Apart from all of the fraudulent transactions perpetrated by Atlas at the hands of

Jacobson, GAAS required CBN to obtain an understanding of Atlas's internal controls and to

assess control risk for the assertions made by Atlas in its financial statements.  CBN failed in this

regard, as the SAC pleads very specific deficiencies in Atlas's internal controls that CBN did not

appropriately address in conducting its audits.  ¶¶278-281.[14]  These identified deficiencies in

---

[12] Allegations of "motive and opportunity" in securities cases typically involve fraud allegations against an individual defendant of a company engaging in suspiciously-timed insider trading. *See e.g. Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F. Supp. 1297, 1313 (C.D. Cal. 1996) (explaining motive and opportunity theory and finding scienter sufficiently alleged).  Here, Plaintiffs' allegations do not rest on this theory as to CBN.

[13] Even if the court is persuaded that these allegations go to motive and opportunity, the Supreme Court in *Tellabs* held that allegations of motive and opportunity, together with other allegations, "may weigh heavily in favor of a scienter inference."  *Tellabs*, 551 U.S. at 325.  Thus, allegations of this type, when viewed holistically and in totality with all of the Complaint's allegations, may contribute to the inference of scienter.

[14] These specific deficiencies include, Atlas's failure to:  (a) have independent directors throughout most of the Class Period; (b) have an audit committee; (c) maintain adequate corporate records; (d) properly approve all equity issuances; (e) hold an annual meeting of shareholders at all material times; (f) maintain a related party transaction or conflicts of interest policy; (g) maintain adequate books and records; (h) have adequate internal control over financial reporting; and (h) have adequate disclosure controls.  ¶¶278-281.

internal controls, together with the allegations concerning CBN's utter failure to review relevant documentation of the NaturalNano transaction, further support the inference of scienter as to CBN. *See In re New Century*, 588 F.Supp.2d 1206,1234-35 (C.D. Cal. 2008) ("[t]he allegations support an awareness on the part of KPMG's audit team that internal controls were problematic, but the team nevertheless accepted incomplete documentation in reaching its determinations. The allegations, therefore, suggest more than a simple mistake-willful ignorance of a company's valuation methods may support a strong inference of scienter.").

As Atlas's auditor, CBN's obligations to test for fraud were not optional and in no way can be characterized as merely negligent.  As detailed in the Complaint, GAAS specifically requires auditors to investigate fraud risk factors and related party transactions, and to exercise heightened professional skepticism in circumstances such as this, where a Company is completely dominated by a few individuals, experienced astronomical (and unexplainable) growth as compared to its competitors and the market generally, and all of that growth is attributable to just a handful of key customers.  *See Suprema Specialties, supra*, 438 F.3d at 280-281.  These allegations are perhaps the most compelling indicators of CBN's conscious disregard and reckless participation in the Atlas fraud.

> iv.     **The Special Committee Investigation, Restatements and SEC Investigation Support an Inference of Scienter**

As set forth in the Statement of Material Facts, the SAC includes new allegations demonstrating Atlas's post-Class Period disclosures concerning the erroneous accounting for the NanoClay transaction and further detailing the other fraud at Atlas.  ¶86; ¶¶132-141.  The findings of a Special Committee convened by Atlas made many findings, including that Atlas's financial statements from 2002-2007 were unreliable, that the accounting for the 2004 halloysite

sale was incorrect, that Atlas had inaccurately represented its halloysite business, that Atlas lacked internal controls, and various findings concerning the improper Jacobson stock transactions and related entity loans.  ¶¶132-141.

After the Special Committee's investigation, Atlas appointed PMB Helin Donovan LLP ("PMB") as independent auditors and Atlas was forced to issue far-reaching restated financials on June 15, 2009.  ¶145.  As noted herein, with respect to the NaturalNano transaction, the restatements recognized the $250,000 on Atlas's financial statements in 2006 as "settlement of a contract," because in no way could the money *be recognized as earned revenue from the sale of clay*.

Significantly, the restatements also confirmed that the host of improper securities issuances, related-party transactions and side deals made by William Jacobson, demonstrate that Jacobson essentially looted the Company by improperly issuing stock and engaging in multiple related party transactions including the issuance of Atlas stock to his wife and children as well as in making loans from Atlas to companies that he owned or controlled.  ¶32.  As is also pleaded in the SAC, the SEC launched a formal investigation into securities law violations at Atlas between 2002 and 2006, which is ongoing.  ¶143.

CBN's only response to all of these allegations is that the restatement allegations are insufficient to support an inference of scienter.  This is a red herring.  As set forth herein, restatements by their very nature are to be used only to correct *material* errors.  (¶¶161-164).  The Company's restatements in this case may support an inference of scienter as the restatements are far more compelling than mere corrections of Atlas's accounting and balance sheet: they confirm the massive fraud perpetrated at Atlas and demonstrate CBN's recklessness in failing to respond.  Thus, the restatements serve as an additional indicia of CBN's scienter.  *Zucco*

*Partners,* 552 F.3d at 1000-1001 (recognizing "bare allegations of falsely reported information" in a restatement may be probative in circumstances where: (1) defendants were exposed to information by virtue of their corporate role; or (2) where defendants must have known about the falsity of the information because it was obvious from the operations of the company).

### v.        Allegations Concerning the PCAOB Investigations of CBN

The SAC also includes detailed allegations that CBN was twice investigated by the PCAOB and that the PCAOB found CBN to have committed violations of GAAP, GAAS and PCAOB standards at times within the Class Period.  In response to the allegations concerning the PCAOB investigations, CBN makes two arguments:  (1) that auditors are routinely investigated, including PMB (the auditor hired to replace Atlas); and (2) that the inspections do not demonstrate CBN's participation in the Atlas fraud.  CBN Br. at 20.  Both of these arguments are disingenuous.

As set forth herein with reference to Plaintiffs' motion to strike, the Court should outright reject CBN's assertion (through extraneous documents) that PMB was also investigated by the PCAOB as supporting CBN's innocence because the argument is inappropriate and irrelevant. With respect to CBN, the SAC demonstrates that the allegations of the PCAOB investigation, taken together with all other facts and evidence pled of CBN's wrongdoing, support an inference scienter.  Furthermore, the PCAOB investigation allegations demonstrate that CBN was investigated for many of the exact same violations as are specifically pleaded with respect to Atlas during a time period overlapping with the Class Period, including the failure to:  obtain competent evidential matter; follow GAAP leading to potentially material misstatements; resolve documentary discrepancies; test the fair value of securities; and perform sufficient procedures to test revenue recognition.  ¶¶282-285.  These allegations are further evidence that CBN routinely

PLAINTIFFS' OMNIBUS OPPOSITION TO THE MOTIONS TO DISMISS FILED BY THE CBN DEFENDANTS AND IN SUPPORT OF PLAINTIFFS' CROSS MOTION TO STRIKE - 29

failed to apply the requisite audit procedures and performed audits of Atlas in a highly reckless manner.[15]

On all of the facts alleged in the SAC, CBN should have prompted Atlas to restate its results or CBN should have withdrawn its audit opinions. CBN did neither and its misstatements had the effect of maintaining the price of the Atlas stock throughout the Class Period artificially high. CBN should be liable for its role in this wrongdoing.

### 3. The Second Amended Complaint Adequately Pleads Scienter With Respect To Defendants Todd Chisholm And Troy Nilson

Reading the SAC holistically with respect to Defendants Chisholm and Nilson, the SAC adequately also pleads scienter with respect to these individuals. It is clear from a plain reading of the SAC, that the allegations of fraud in the SAC are attributed, not only to CBN, but also to its shareholders, Chisholm and Nilson who *personally participated* in the fraud alleged and conducted the audits of Atlas on behalf of CBN. The SAC specifically pleads as to Chisholm that Chisholm did not possess a license accountant practice privileges in the State of Idaho but "personally took part" in the subject audits. As to Nilson, the SAC pleads that Nilson has accountant practice privileges in the State of Idaho, that CBN represents that Nilson as an "audit committee financial expert" under the rules of the SEC, and that Nilson "personally took part" in the audits. The SAC further pleads that "CBN, Chisholm and Nilson are referred to collectively in this Complaint as the ",CBN Defendants,." (¶¶ 37-39).

---

[15] CBN's authority, *Cardinal Health* is wholly distinguishable. There, plaintiffs claimed that SEC findings "E&Y's *past scandals*" were sufficient to demonstrate a culture of scienter. *In re Cardinal Health Inc. Secs. Litigs.*, 426 F.Supp.2d 688, 778-79 (S.D. Ohio 2006). Here, the PCAOB findings are directly relevant to CBN's audits Atlas.

PLAINTIFFS' OMNIBUS OPPOSITION TO THE MOTIONS TO DISMISS FILED BY THE CBN DEFENDANTS AND IN SUPPORT OF PLAINTIFFS' CROSS MOTION TO STRIKE - 30

In the SAC, Plaintiffs were careful to plead their allegations of fraud as attributed to CBN and Defendants Chisholm and Nilson because Chisholm and Nilson were responsible for CBN's work for Atlas.[16]  For example, the SAC details CBN's role in the Atlas fraud (*see* ¶¶169-174) and in the next ordered paragraph these detailed allegations are attributed to all three defendants.

> During the Class Period, the **CBN Defendants** did not perform the "highest level" of "in-depth examination."  To the contrary, the **CBN Defendants** violated GAAP, GAAS, and the standards of the PCAOB in PCAOB in auditing the financial statements of Atlas in preparation for filing with the SEC.

¶ 175 (emphasis added).  There are many other instances in the SAC such as this.  *See* ¶¶285, 314 and 317.  In totality, the SAC is sufficiently detailed, as it pleads the direct participation of Chisolm and Bierwolf and the scienter of all of the CBN Defendants.

Irrespective of the SAC's specific allegations, the Ninth Circuit has held that an inference of scienter can be drawn from a defendant's high-ranking position.  *See South Ferry*, 542 F. 3d 776 (9th Cir. 2008); *Benson  v. Applied Signal Tech., Inc.,* 527 F.3d 982 (9th Cir. 2008).  These cases make clear that:  (a) a defendant's position within the company is a relevant fact to consider in the *Tellabs* analysis; (b) all particularized allegations about a defendant's activities and statements should be considered before making a position-based inference, just as in any *Tellabs* analysis; and (c) position alone creates a strong inference of scienter in cases, such as this, where it is "absurd to suggest" that a defendant did not know.  *See South Ferry,* 542 F.3d at 786; *Benson,* 527 F.3d at 988.

---

[16] It is conspicuous that Plaintiffs made the conscious decision, based on their investigation, *not* to sue Nephi Bierwolf, the third principal of CBN, because Plaintiffs had no facts concerning Mr. Bierwolf's participation in the audits of Atlas or in performing any other work on Atlas's behalf.

Applying these principles here it would be difficult to conclude that Chisholm and

Nilson, shareholders of CBN (a company with only 3 total shareholders and a total professional

staff of between six (6) and twelve (12) employees at all relevant times (¶176)), who personally

prepared the financial statements of CBN and the audits of CBN's financial statements during

the Class Period, did not know about Atlas's fraud and CBN's participation, or both, recklessly

disregarded what was happening right under their noses.  Chisholm and Nilson do not argue, nor

could they, that information that would have alerted them to the fraud was hidden or otherwise

not made available to them.[17]  Accordingly, read in its entirety and "viewed with a practical and

common-sense perspective[,]" *South Ferry,* 542 F.3d at 784, the SAC sufficiently pleads scienter

with respect to Defendants Chisholm and Nilson.

### 4.      The SAC Sufficiently Alleges Loss Causation

The PSLRA requires a plaintiff to allege that a defendant's act or omission "caused the

loss" for which he seeks to recover.  15 U.S.C. §78u-4(b)(4).  To satisfy this requirement, as the

Supreme Court explained in *Dura Pharms., Inc. v. Broudo*, plaintiff must show that investors

paid an artificially inflated price for stock and that the price fell "after the truth became known"

regarding defendant's misrepresentations. 544 U.S. 336, 347 (2005).  The allegations need only

give the defendants "some indication" of loss and its causal connection.  *In re Daou Systems,*

*Inc.*, 411 F.3d 1006, 1026 (9th Cir. 2005) ("the foregoing allegations, if assumed true, are

sufficient to provide Daou with some indication that the drop in Daou's stock price was causally

related to Daou's financial misstatements reflecting its practice of prematurely recognizing

revenue before it was earned").  In contrast to the heightened pleading required of certain other

---

[17] Of course, as set forth in footnote 11 above, it goes without saying that if a company withholds information from its auditor, this too would alert that auditor of fraud.

elements of securities fraud, *Dura* declined to adopt a heightened pleading standard for loss causation, reaffirming the "simple test" of *notice pleading* under Rule 8(a)(2), which should not "impose a great burden upon a plaintiff." *Dura*, 544 U.S. at 346-347.

CBN's arguments concerning loss causation (CBN Br. at 11) are premised on a misunderstanding of Plaintiffs' allegations concerning the Company's restatements. CBN posits that Plaintiffs are somehow required to allege loss causation for the restatements. The law does not support this interpretation. *See New Century*, 588 F.Supp.2d at 1236-7 (holding that "[p]laintiffs must plead facts giving rise to a reasonable inference that the market became aware of the misrepresentations," and citing cases demonstrating that the law does not specify form of disclosure or how previously concealed information must be revealed).

CBN does not dispute that the SAC's allegations concerning the October 9, 2007 revelations satisfy the simple test for pleading loss causation. On that day, the truth about Atlas's fraud was revealed to the market concerning Atlas's sham halloysite business. ¶¶144-146. The October 9, 2007 disclosures removed the artificial inflation from Atlas's share price, causing its stock to drop a staggering 51% virtually overnight. *Id.* The clear importance of the revelation that Atlas had no halloysite business, and the message that the market understood, was that Atlas had previously lied and had absolutely no prospects of any future halloysite business. The impact of these statements was absorbed immediately by the market.

Plaintiffs do not need to show that the stock was further affected by the Company's restatements which came nearly two years later, in July 2009. Indeed, by this time, the damage had been done and the market had long-absorbed the impact of Atlas's false and misleading statements (this is why the Class Period in this matter ends on October 9, 2007 rather than after the Company's restatements). The restatements merely confirmed what the market had already

learned in the aftermath of the October 2007 disclosures.  Plaintiffs' allegations are more than

sufficient to plead loss causation, and there is no separate requirement of loss causation for the

belated restatement disclosures.[18]  *See Dura Pharm.*, 544 U.S. at 342 (2005) (recognizing that

truth "leak[s]" to the market); *New Century*, 588 F.Supp.2d at 1237 (C.D. Cal. 2008) ("The

March 2, 2007 disclosure indicates the need to reevaluate at least certain financial statements in

'prior periods.'  This includes the 2005 financial statements reviewed by KPMG.  As a

significant stock decline followed this disclosure, Plaintiffs have properly alleged loss

causation.").

## III.   PLAINTIFFS' CLAIMS AGAINST DEFENDANTS CHISHOLM AND NILSON ARE NOT TIME BARRED

### A.   The Claims Were Filed Within The Limitations Period

Under the Sarbanes-Oxley Act of 2002, allegations of securities fraud must be brought no

later than the earlier of:  "(1) 2 years after the discovery of the facts constituting the violation; or

(2) 5 years after such violation."  28 U.S.C. §1658(b)(1)(2).  Chisholm and Nilson premise their

statute of limitations argument entirely on the assertion that the clock started to run on Plaintiffs'

claims as to their wrongdoing on the same day that *Atlas* revealed its fraud to the market

(October 9, 2007).  They are wrong.

Although Plaintiffs were clearly on notice on October 9, 2007 of their claims as to Atlas

those parties related to Atlas, the claims as to all of the CBN Defendants' were not apparent until

much later.  In fact, Plaintiffs did not learn of the claims against the auditors until they began

---

[18] While CBN may later argue the merits of the connection between the October 9, 2007
disclosures, such factual questions are not appropriately resolved on a 12(b)(6) motion. Here, the
Complaint sufficiently provides CBN with an "indication of the loss and the causal connection
that [Plaintiffs] [have] in mind." *Dura*, 544 U.S. at 347. Plaintiffs' allegations of loss causation
are adequate and should be sustained.

their investigation and preparation of their Consolidated Amended Complaint.  This occurred

sometime after their appointment as Lead Plaintiffs on March 25, 2008 and before the filing of

the CAC on July 28, 2008, which asserted claims against CBN.  It was not until after Plaintiffs

entered into a settlement with Atlas and the related entities in approximately July of 2009 that

Plaintiffs learned of Defendants Chisholm and Nilson's personal participation in the audits,

which are the subject of their securities claims.  Upon receiving that information, Plaintiffs

promptly added these defendants in the SAC, which was filed on November 9, 2009.  Based on

the facts and procedural history of this matter, therefore, the absolute earliest the clock could

have started to run would have been the day Plaintiffs were appointed Lead Plaintiffs and

commenced their investigation of relevant claims: March 25, 2008.  Because the SAC named

Chisholm and Nilson on November 9, 2009, these defendants were included within the two year

limitations period.

Chisholm and Nilson cite paragraph 128 of the SAC but do not explain why Plaintiffs

should have been alerted to their personal participation in the Atlas fraud on October 9, 2007.

Paragraphs 128 and 129 of the SAC make clear that October 9, 2007, is the first time that

Plaintiffs became aware of Atlas's fraud, *not* CBN's fraud and *not* the fraud of Defendants

Chisholm and Nilson.

### B.    Relation Back

Even if the Court were to find that Plaintiffs' claims as to Chisholm and Nilson were not

brought within two years after discovery of the facts constituting their fraud, Plaintiffs' claims

are nevertheless timely because the allegations in the SAC against each relate back to Plaintiffs'

CAC, filed on July 28, 2008.  As explained above, the CAC included Plaintiffs' securities claims

against CBN. Pursuant to Federal Rule of Civil Procedure 15(c):

PLAINTIFFS' OMNIBUS OPPOSITION TO THE MOTIONS TO DISMISS FILED BY THE
CBN DEFENDANTS AND IN SUPPORT OF PLAINTIFFS' CROSS MOTION TO
STRIKE - 35

An amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

    i.    received such notice of the action that it will not be prejudiced in defending on the merits; and

    ii.    knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c)(1). Here, Plaintiffs' claims relate back pursuant to subsection FED. R. CIV. P 15.(c)(1)(C) because: (1) Defendants Chisholm and Nilson, as shareholders of CBN, were on notice of the pending suit against CBN from inception; (2) neither will be prejudiced in defending themselves on the merits; and (3) both knew or should have known that each should have been named as co-defendants.[19]

### 1.    Notice

The notice requirement is satisfied if defendant received notice, actual or constructive, of the institution of the action within 120 days of the filing of the original complaint. *Korn v. Royal Caribbean Cruise Line, Inc.*, 724 F.2d 1397, 1401 (9th Cir. 1984). "If the proposed new defendants have an identity of interest with the named defendant, notice will be imputed to the former." *Brink v. First Credit Res,* 57 F.Supp.2d 848, 853 (Dist. Ariz. 1999). (citing *Korn*, 724

---

[19] Defendants Chisholm and Nilson do not and cannot dispute that the allegations in the SAC with respect to each arose out of the conduct, transaction, or occurrence set out in the original complaint. FED.R. CIV. P. 15(c)(1)(B).

F.2d at 1401).  The Ninth Circuit explained that "identity of interest" exists when "the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other."  *G.F. Co. v. Pan Ocean Shipping Co., Ltd.*, 23 F3d 1498, 1503 (9th Cir. 1994) (*quoting* 6A Charles Miller, et al., Federal Practice and Procedure § 1499 at 146 (2d ed. 1990) (cases cited therein)), *see also Blackhawk v. City of Chubbuck*, No. CV-04-629 E BLW., 2005 WL 3244406, *2 (D. Idaho Nov. 21, 2005) (same), *Schiavone v. Fortune,* 477 U.S. 21, 29 (1986) ("Timely filing of a complaint, and notice within the limitations period to the party named in the complaint, permit imputation of notice to a subsequent named and sufficiently related party.").  With respect to individuals, the Ninth Circuit said "[w]hen a person owns most or all of the shares in a corporation and controls the affairs of the corporation, *it is presumed* that in litigation involving that corporation the individual has sufficient commonality of interest." *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983) (emphasis added).

As shareholders of Defendant CBN, Defendants Chisholm and Nilson had actual notice of the pending suit.  And under an "identity of interest analysis," as shareholders and certified public accountants of Defendant CBN, responsible for the day-to-day operations of CBN, constructive notice is also imputed.  Moreover, CBN and Defendants Chisholm and Nilson are represented by the same counsel in this matter, which supports a finding that both had timely notice of this suit.  *See Blackhawk*, 2005 WL 3244406, at *2 (finding notice requirement satisfied under imputed notice/community of interest theory where proposed additional defendants were employed by named defendant who received timely notice and proposed additional defendants and named defendant would be represented by the same attorneys).

### 2. Prejudice

Prejudice to the party to be added by an amendment is the keystone to a Rule 15 analysis. *Korn*, 724 F.2d at 1400.  The Ninth Circuit said, "[a]voiding prejudice to the party to be added. .[is] our major objective.  Timely notice, whether formal or informal, is one way of assuring that the party to be added has received ample opportunity to pursue and preserve the facts relevant to various avenues of defenses." *Id*.  In *Korn*, the court found that, through proposed additional defendant's community of interest with the named defendant, proposed additional defendant had access to the same records; thus, proposed additional defendant would not be prejudiced because it had the opportunity to pursue and preserve facts relevant to its defense.  *Id*. at 1401.

Applying this analysis to the facts here, Chisholm and Nilson will suffer no prejudice in having to defend against the claims in the SAC since through their community of interest with CBN, both have had access to the same records as CBN; and thus, the opportunity to pursue and preserve facts relevant to their defense.  Further, neither has suffered prejudice in preparing a defense from the passage of time because this case has yet to move beyond the Rule 12(b) stage. A Rule 16 conference has yet to be scheduled and no discovery has taken place.  And again, Chisholm and Nilson will be defended by the same counsel that is defending CBN, which undermines any claim of prejudice.  *See Blackhawk*, 2005 WL 3244406, at *3 (finding that proposed additional defendants would not be prejudiced by being brought into suit where their attorneys were already at work in defense of other named defendants).

### 3.  Mistake

With respect to the third element of the analysis, the Ninth Circuit takes a liberal approach.  *Blackhawk*, 2005 WL 3244406, * 3; *Brink v. First Credit Res.*, 57 F. Supp.2d 848, 856 (D. Ariz. 1999).  Amendments are allowed even in cases where "the previously unknown

PLAINTIFFS' OMNIBUS OPPOSITION TO THE MOTIONS TO DISMISS FILED BY THE CBN DEFENDANTS AND IN SUPPORT OF PLAINTIFFS' CROSS MOTION TO STRIKE - 38

defendants were identified only after the statute of limitations had run." *Id.* (citing *Kilkenny v. Arco Marine, Inc.*, 800 F.2d 853 (9th Cir. 1986); *G.F. Co. v. Pan Ocean Shipping Co., Ltd.*, 23 F.3d 1498, 1503 (9th Cir. 1994)). In *Blackhawk*, the court granted plaintiffs leave to file a second amended complaint to name additional defendants after the statute of limitations had run. 2005 WL 3244406, at *3. Plaintiffs claimed that they were only able to ascertain the identities of the proposed additional defendants after the named defendants provided discovery. *Id.* The court held "[a]llowing plaintiffs to substitute the [defendants'] actual identities now that defendants have finally provided the information necessary to identify them is therefore proper." *Id.*[20] The same is true here. Plaintiffs did not learn that Chisholm and Nilson personally participated in the audits of Atlas until they received this information in connection with the settlement discussions with Atlas on or about July 2009. Once that information was made available, Plaintiffs quickly amended their complaint to name Defendants Chisholm and Nilson.[21] Plaintiffs could not, in good faith, have included specific allegations as to these Defendants in their prior CAC, especially given the rigorous pleading requirements imposed in this securities matter. This case is different than *Kilkenny v. Arco Marine Inc.*, 800 F.2d 853 (9th Cir. 1986), relied on by Chisholm and Nilson. There, the plaintiff was specifically made aware of the identity of potential defendants in the named defendant's answer, which was filed within the limitations period, but sat on her rights until after the statute of limitations had run. 800 F.2d at 857.

---

[20] In *Blackhawk*, unlike here, plaintiffs named fictitious defendants. However, this is a difference without a distinction insofar as a Rule 15(c) analysis is concerned.

[21] Defendants Chisholm and Nilson question the timing of when Plaintiffs' first learned of their identities. *See* Chisholm and Nilson Brief, at 6. This is a disputed issue of fact. Construing the SAC in the light most favorable to Plaintiffs and taking all material allegations in the SAC as true, it would be inappropriate to dismiss the SAC on this basis at this time.

Given the circumstances of this case, the Court should either find that: (1) Plaintiffs' claims as to Chisholm and Nilson are timely because the limitations clock began running on March 25, 2008 at the earliest; or (2) the claims asserted against Chisholm and Nilson are timely pursuant to the relation back doctrine.

## CONCLUSION

For all the foregoing reasons, the Complaint amply and adequately pleads claims as to the CBN Defendants, and their motions to dismiss should be denied in all respects.


Dated: March 17, 2010                                 Respectfully submitted,


                                    **By:**    _/s/ Ted C. Murdock_____
                                            B. Newal Squyres (ISB #1621)
                                            Ted C. Murdock (ISB #5431)
                                            HOLLAND & HART LLP
                                            101 S. Capitol Blvd., Suite 1400
                                            P.O. Box 2527
                                            Boise, ID 83701
                                             (208) 342-5000

                                            **LITE DEPALMA GREENBERG, LLC**
                                            Joseph J. DePalma
                                            Katrina Carroll
                                            Two Gateway Center
                                            12th Floor
                                            Newark, NJ 07102-5003
                                            (973) 623-3000

                                            ***Attorneys for Lead Plaintiffs***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of March, 2010, I electronically filed the foregoing **PLAINTIFFS' OMNIBUS OPPOSITION TO THE MOTIONS TO DISMISS** with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Joseph J. DePalma                              jdepalma@litedepalma.com
Katrina Carroll                                kcarroll@litedepalma.com
Jennifer Sarnelli                              jsarnelli@litedepalma.com
LITE DePALMA GREENBERG, LLC
Newark, New Jersey

[Attorneys for Lead Plaintiffs]

Kim C. Stanger                                 kcs@hawleytroxell.com
HAWLEY TROXELL ENNIS & HAWLEY LLP
Boise, Idaho

[Attorneys for CBN and Todd Chisholm and Troy Nilson]

Ellen Maycock                                  emaycock@klmrlaw.com
Steven G. Loosle                               sloosle@klmrlaw.com
KRUSE LANDA MAYCOCK & RICKS LLC
Salt Lake City, Utah

[Attorneys for CBN and Todd Chisholm and Troy Nilson]

Laurence M. Rosen                              lrosen@rosenlegal.com
ROSEN LAW FIRM, PA
New York, NY

Thomas A. Banducci                             tbanducci@bwslawgroup.com
BANDUCCI WOODARD SCHWARTZMAN, PLLC             kgarcia@bwslawgroup.com
Boise, Idaho                                   lharris@bwslawgroup.com
                                               rsoni@bwslawgroup.com
[Attorneys for Defendant Atlas Mining Company] ssmith@bwslawgroup.com
                                               wwoodard@bwslawgroup.com

PLAINTIFFS' OMNIBUS OPPOSITION TO THE MOTIONS TO DISMISS FILED BY THE CBN DEFENDANTS AND IN SUPPORT OF PLAINTIFFS' CROSS MOTION TO STRIKE - 41

Philip M. Guess                                          philg@klgates.com
Richard A. Kirby                                         Rhonda.hinman@klgates.com
K&L GATES LLP                                            Richard.kirby@klgates.com
Seattle, Washington

[Attorneys for Defendant Atlas Mining Company and Nano
Clay Technologies, Inc.

Angelo J. Calfo                                          acalfo@yarmuth.com
Matthew A. Carvalho                                      srasmussen@yarmuth.com
YARMUTH WILSDON CALFO PLLC                               mcarvalho@yarmuth.com
Seattle, Washington                                      smeyer@yarmuth.com

Bryan A. Nickels                                         ban@hallfarley.com
Kevin J. Scanlan                                         kat@hallfarley.com
HALL FARLEY OBERRECHT and BLANTON                        kjs@hallfarley.com
Boise, Idaho                                             klm@hallfarley.com

W. Adam Duerk                                            aduerk@bigskylawyers.com
MILODRAGOVICH, DALE, STEINBRENNER &
NYGREN, PC
Missoula, Montana

[Attorneys for Defendant William T. Jacobson]

Nathan M. Longenecker                                    longenecker@twhlaw.com
TEMPKIN WIELGA HARDT & LONGENECKER LLP                   ira@twhlaw.com
Denver, Colorado

Stephen R. Thomas                                        srt@moffatt.com
MOFFATT THOMAS BARRETT ROCK & FIELDS                     cld@moffatt.com
Boise, Idaho                                             ecf@moffatt.com
                                                         moffattthomas@hotmail.com
[Attorneys for Defendant Robert Dumont]                  sec@moffatt.com
                                                         tmh@moffatt.com

Thomas G. Walker                                         twalker@cosholaw.com
COSHO HUMPHREY LLP                                       pcarson@cosholaw.com
Boise, Idaho

Lewis S. Kahn                                            lewis.kahn@kgscounsel.com
Kim E. Miller                                            kim.miller@kgscounsel.com
KAHN, GAUTHIER SWICK, LLP
New Orleans, Louisiana

PLAINTIFFS' OMNIBUS OPPOSITION TO THE MOTIONS TO DISMISS FILED BY THE
CBN DEFENDANTS AND IN SUPPORT OF PLAINTIFFS' CROSS MOTION TO
STRIKE - 42

C. Matthew Andersen                     cma@winstoncashatt.com
Courtney R. Beaudoin                    crb@winstoncashatt.com
WINSTON & CASHATT
Spokane, Idaho

William G. Dryden                       wgd@elamburke.com
ELAM & BURKE, P.A.                      buff@elamburke.com
Boise, Idaho

[Attorney for Defendant Ronald Price]


   /s/ Ted C. Murdock   
for Holland & Hart LLP


4762070_1.DOC